594 So.2d 397 (1991)
STATE of Louisiana
v.
Gregory WARNER.
No. KW 91 0908.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
Writ Denied January 31, 1992.
*398 Office of Dist. Atty., Covington, for plaintiff-appellee.
William R. Campbell, Jr., New Orleans, for Dist. Atty.
Office of Public Defender, Washington Parish, Covington, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
Defendant, Gregory Warner, was tried by a jury and convicted of illegal possession of stolen things valued at five hundred dollars or more, in violation of La.R.S. 14:69. At his sentencing hearing, he filed a pro se motion requesting the trial court to dismiss his appointed counsel (who had represented him to that point of the instant proceedings) and permit him to proceed pro se on appeal. Before ruling on defendant's motion, the trial court sentenced him to imprisonment at hard labor for a term of ten years.[1]

FACTS
Before beginning the March 5, 1991 hearing on defendant's motion to proceed pro se *399 on appeal, defendant told the trial court he wished to represent himself on appeal and desired a hearing on his motion to proceed pro se. Citing State v. Dupre, 500 So.2d 873 (La.App. 1st Cir.1986), writ denied, 505 So.2d 55 (La.1987), the trial court stated it would conduct a hearing to determine whether or not defendant knowingly and intelligently elected self-representation. Noting that State v. Dupre dealt with the right of self-representation at trial rather than on appeal, the trial court correctly indicated that it would apply the Dupre criteria, with appropriate modifications for self-representation on appeal.
At the beginning of the hearing, the trial court told the defendant he would have to conform to appropriate courtroom decorum. The court then informed defendant that he would have to stand each time he addressed the court or subject himself to possible sanctions by the court for failure to do so. The court indicated defendant appeared unaware of the proper courtroom decorum required of a defendant who chooses to represent himself.
The defendant was questioned by the court under oath concerning his ability to represent himself. The record reveals the following:
Q. Okay, sir, tell me something, how old are you?
A. Thirty-four years old, Your Honor.
Q. Have you ever represented yourself before in any of your previous convictions?
A. Once in a misdemeanor court and, also, filed supplemental appeal brief to a brief that was filed in one of my cases in '87.
Q. Are you familiar with the Rules of Court?
A. Yes, sir.
Q. What are the Rules of Court?
A. The Rules of the Appellant Court?
Q. Rules of Court. Just Rules of Court? Are you familiar with Rules of Court?
A. No, sir.
Q. Are you familiar with rules that happen to be printed in books?
A. Yes, sir, certain rules.
Q. What kind of rules apply?
A. Rules apply to an appeal is that you can file your appeal, on appeal you have the right to file under Article 920, errors apparent (sic) on the face of the record, under State versus Martin. You also have the right to file your assignment of errors. You have the right to file post-conviction relief application.
Q. Speaking of post-conviction relief, are you familiar with that article that I cited to you at the end of your sentencing, Article 930.8?
A. No, sir. But I understand what you said that I have a right to file post-conviction relief within three years.
Q. I need to advise you that self-representation is almost always unwise and that you may well conduct a defense that would ultimately be to your detriment. Do you understand that, sir?
A. Yes, sir.
Q. I also need to tell you that you are not entitled to and will receive no special indulgences by the Court if you intend to represent yourself. Do you understand that?
A. Yes, sir.
Q. That if you don't use the right size paper, if you don't use the right color ink, if you don't useif it's not typed, if those are the rules required by the First Circuit, that you will be bound by those rules and paper and material will be bounced back to you. Do you understand that, sir?
A. Yes, sir.
Q. Do you understand that this can all work to your detriment, sir?
A. Yes, sir.
Q. That no special help will be forthcoming from any judge or the Clerk of the First Circuit Court of Appeal or any local clerk in assisting you. Do you understand that?
A. Yes, sir.
Q. Do you understand that the prosecution of this case is going to be represented by an experienced counsel well versed in appellant review?
A. Yes, sir.
Q. Can you read, sir.?
A. Yes, sir.
*400 Q. Are you familiar with Black's Law Dictionary?
A. Yes, sir.
Q. You are?
A. Yes, sir.
Q. What kind of book is it?
A. It's a Black Law Dictionary that explains to you all constitutions (sic) of the Constitutional rights, and etc.
Q. What is your educational background, sir?
A. Seventh grade, Your Honor.
Q. Where did you go to the seventh grade?
A. George Washington Carver in New Orleans, Louisiana.
Q. Do you have any brothers or sisters?
A. Yes, sir.
Q. How many?
A. I have three brothers and three sisters. One is deceased.
Q. How manyany of your brothers or sisters ever get into any trouble before?
A. No, sir.
Q. You are the only one?
A. Yes, sir.
Q. Why is that?
A. I really couldn't tell you, Your Honor.
Q. Have you ever had any problems with seeing a mental health specialist at any time?
A. Yes, sir. I was sent to Jackson State Hospital for ninety days evaluation.
Q. Back when?
A. I believe that was 1980.
Q. At that time, do you know what your diagnosis was?
A. No, sir, Your Honor.
Q. Did you talk about proceeding pro se with Mr. Simmons [defense counsel] in this matter?
A. I hadn't had a chance to talk to Mr. Simmons until this day.
Q. That's not what I asked you.
A. When you first called my name, well, I told him that I would like to proceed per (sic) se.

MR. SIMMONS:
Your Honor, we have discussed this matter about his wishes to proceed pro se and I informed him of our appellant attorney in the office who handles all the appeals for the two parishes and he indicated that he wished to go further with this. We have discussed that issue, Your Honor.

EXAMINATION BY THE COURT:
Q. How do you propose to handle such items as written motions, sir?
A. Print them.
Q. Print them?
A. Yes, sir.
Q. By printing, them do you mean a press or handwriting them?
A. Handwriting.
Q. Do you know whether or not West will permit a printed form to be filed with the First Circuit?
A. I have printed them before to the First Circuit.
Q. Do you know if they will accept it?
A. They're supposed to, Your Honor.
Q. Is there any question in your mind about your mental capacity to proceed representing yourself?
A. No, sir.
Q. With a seventh grade education you want to take on a person who has four years of college, three years of law school, and I don't know how many years the District Attorney's Office has with regard to a person who specializes in writing appeals for the First Circuit, and you want to take on that man is that what you are trying to tell me?
A. I do, Your Honor.
Q. You want to have a seventh grade education matched against that man?
A. Yes, sir.
Q. And yet you want to turn down Mr. Looney who is a person who has been representing indigents in this parish and has filed not only many writs of review to the First Circuit, but has won writs on (sic) review to the First Circuit and rather appeals to the First Circuit, and had writs affirmed in the Supreme Court, especially with regard to the crime of even a murder, and yet you want to turn down that man's services in order to proceed with your own; is that correct?
*401 A. Yes, sir, and I have reason why, Your Honor.
Q. What's that?
A. My reason because (sic) I intend to file ineffective assistance and all.
Q. You're going to what?
A. I intend to file ineffective assistance and also Mr. James Looney cannot be expected to assist me in filing such petition against one of his colleagues.
Q. He can't?
A. I cannot expect him to help me file ineffective assistance against one of his colleagues because they're all from the same office.
Q. I see.

MR. SIMMONS:
Your Honor, he couldn't do that anyway because you can't do it on appeal.

EXAMINATION BY THE COURT:
Q. Do you understand what Mr. Simmons said?
A. I know that, Your Honor. I'm talking about after I done exhaust (sic) all of my appeals (sic) rights.[[2]]
Q. Then Mr. Looney isn't going to be coming into play, the conflict won't be in play until well after your appeal; is that right, sir?
A. Yes, sir.
Q. So already you are telling me something that you want to do that isn't going to be available to you
A. No, sir.
Q. and you have already stubbed your toe.
A. I have other reasons, Your Honor.
Q. Yes.
A. My reason because (sic) Mr. James Looney is probably the only public defender who is handling appeals and my name will go to the bottom of that list and I may be done (sic) two or three of them (sic) ten years, but if I represent myself, perhaps, I can file my appeal brief and get my time back sometime this year, because I wasn't provided with a fair trial and everybody that was here in the trial know (sic) that.
Q. What specific allegations of error would you make on appeal, sir?
A. What assignment of error would I make on appeal?
Q. Uh-huh (affirmative response).
A. First of all, I would make the assignment of error the Court errored (sic) in finding me guilty of a crime in which a warrant wasn't never (sic) issued for my arrest by Orleans Parish. I said, first of all, I would allege in my assignment of errors that the Court errored (sic) in finding me guilty of a crime in which an arrest warrant was never issued for my arrest concerning theft of an automobile and Washington Parish took upon themself (sic) to charge me with possession of stolen property. Second of all, I allege the assignment of error that William Stockall (phonetic) arrested me without probable cause. At the time of my arrest he had no positive information that the vehicle was reported stolen from Orleans Parish. Second of all, the arresting officer claimed that the informant received information from the Sheriff's Department from a confidential informer that Gregory Warner was leaving from (sic) Hunt's Bar heading to Franklinton, Louisiana, in a stolen vehicle and this information was not established. On the theory of that, testimony was not given by the Sheriff's Department to establish that said information was received by a confidential informer, nor was the officer that was in pursuant (sic) of me, as he claimed at trial, gave testimony concerning that, that he had received information that the vehicle was stolen at the time of my arrest.
Q. That would sort of be at the heart of your reason for appeal; is that correct, sir?
*402 A. Those are the main errors that I would focus on.
Q. All right, sir.
(R 123-134)
Immediately after the trial court concluded this inquiry, it denied defendant's motion to proceed pro se on appeal. The court stated it found defendant lacked the necessary skill and ability to adequately represent himself on appeal. The court indicated its ruling was made because of the defendant's responses to the court's questions.

RIGHT TO SELF-REPRESENTATION ON APPEAL
Defendant asserts the trial court's ruling denying his motion to proceed pro se on appeal violates his Sixth Amendment right to self-representation. He contends the advice the trial court gave him at the hearing concerning self-representation, together with his own responses to the court's questioning, show he intelligently and voluntarily waived his right to counsel. Accordingly, defendant concludes that the trial court's denial of his motion should be reversed, allowing him to represent himself on appeal.[3]
The Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 388, 105 S.Ct. 830, 832, 83 L.Ed.2d 821 (1985); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court raised to constitutional level the right of a defendant in a state criminal trial to proceed without assistance of counsel when he voluntarily and intelligently elects to do so.
In State v. Graves, 246 La. 460, 165 So.2d 285 (1964), the court recognized the right of an indigent defendant to court-appointed counsel on appeal. Apparently no Louisiana appellate court has expressly addressed the issue of whether or not a criminal defendant's right to self-representation extends beyond trial into the appellate process. However, other jurisdictions have held that the right to self-representation extends into the appellate process. See, e.g., State v. Lewis, 104 N.M. 218, 719 P.2d 445 (Ct.App.1986); Webb v. State, 533 S.W.2d 780 (Tex.Crim.App.1976). We hold a defendant's right to self-representation extends to his first appeal. However, the accused's right to proceed pro se on appeal does not include the right to appear before this Court and present oral argument. See Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). This court has discretion to decide whether or not such an appearance and presentation will be allowed. See State v. Lewis, 104 N.M. at 220-221, 719 P.2d at 447-448; Webb v. State, 533 S.W.2d at 784.
Because an accused managing his own defense "relinquishes ... many of the traditional benefits associated with the right to counsel," he "must `knowingly and intelligently' forgo those relinquished benefits" in order to represent himself. Faretta v. California, 422 U.S. at 835, 95 S.Ct. at 2541. The determination of whether or not there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); State v. Carpenter, 390 So.2d 1296, 1298 (La.1980).
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'
*403 Faretta v. California, 422 U.S. at 835, 95 S.Ct. at 2541 (citing Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). Thus, before a trial court allows a defendant to represent himself, it must determine whether or not the defendant's waiver of counsel is intelligently and voluntarily made, and whether or not his assertion of his right to represent himself is clear and unequivocal. State v. Hegwood, 345 So.2d 1179 (La.1977); State v. Dupre, 500 So.2d at 878.
In State v. Dupre, 500 So.2d at 879-880 n. 4, we set forth criteria trial courts could use to ascertain whether or not a defendant knowingly and intentionally elected to represent himself. While these criteria were fashioned for the situation in which a defendant desires to proceed pro se at trial, with appropriate modifications, these guidelines may be utilized by trial courts in the situation in which a defendant desires to represent himself on appeal. As we stated in State v. Dupre, the suggested guidelines are merely suggestions and not minimum requirements that, if not followed, would necessitate reversal in any particular situation. However, we emphasize that the trial court must make an adequate inquiry for the reviewing court to determine whether or not the defendant has knowingly and intelligently elected to represent himself on appeal.
After carefully reviewing the record, we find that the trial court's explanation of rights and inquiry concerning waiving counsel and proceeding pro se on appeal was adequate. The trial court warned the defendant of the dangers and disadvantages of self-representation on appeal, and the defendant clearly and unequivocally declared to the trial court that he wished to proceed pro se on appeal and did not want counsel. The question remaining is whether the defendant made a knowing and intelligent waiver.
Faretta emphasized that the court should make a sufficient inquiry about the accused's circumstances to determine that he is making the waiver of counsel "with eyes open". Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. In Dupre, this court also stated that Faretta recognized the authority of a trial court to refuse to permit self-representation when, despite its efforts to explain the consequences of waiver, defendant is unable to reach the level of appreciation needed for a knowing and intelligent waiver.
The trial court has much discretion in determining whether the defendant's waiver is knowing and intelligent, and an appellate court should not reverse such a ruling unless an abuse of that discretion is shown. There are pertinent practical considerations for applying this standard of appellate review to this substantive issue. At the trial level, the court is much more familiar with the accused as an individual because it has the opportunity of seeing the defendant at a number of court appearances and motions. In considering an appeal, the sole contact the appellate court has with a litigant may be the brief filed on his behalf. Therefore, if a litigant has any hope of obtaining relief, that brief must (1) be done properly, (2) be argued coherently, and (3) raise claims upon which relief can be granted. The issue is not only whether or not defendant will win (or lose) on the merits, but whether he will, as a practical matter, have an appeal at all if he proceeds in proper person. For example, in the instant case, the defendant's appellate claims are a restatement of his contention that the arresting officer did not know that the vehicle was stolen when defendant was arrested and, thus, the arrest was made without probable cause. The lack of probable cause for arrest is not a ground for invalidating a subsequent conviction. See State v. Smith, 357 So.2d 798 (La.1978). Since that claim is without merit, defendant's appeal could be totally wasted.
Undoubtedly, some pro se litigants are competent to represent themselves on appeal. The trial court ruled that the defendant is not one of them. We have carefully reviewed the record and conclude the trial judge did not abuse his much discretion in so ruling. Defendant failed to demonstrate, through his responses to the *404 court's questioning, that he possessed a sufficient level of competency to knowingly and intelligently waive his right to counsel on appeal. Defendant had only a seventh grade level education; his responses to the court's inquiries revealed that his knowledge and understanding of substantive and procedural criminal law were below the level needed to knowingly and intelligently waive his right to counsel and, thereby, to effectively exercise his right to self-representation on appeal.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the writ of certiorari previously issued herein is recalled and the supervisory relief requested by the relator is denied.
WRIT OF CERTIORARI RECALLED.
NOTES
[1] Before imposing sentence, the trial court denied defendant's counseled motions for a new trial and post judgment verdict of acquittal. Contemporaneously with the denial of those motions, the trial court correctly refused to consider a separate pro se motion for new trial because the defendant was represented by counsel. A criminal defendant has no right to be both represented and representative. State v. McCabe, 420 So.2d 955 (La.1982); State v. Bodley, 394 So.2d 584 (La.1981); State v. Walter, 542 So.2d 586 (La.App. 1st Cir.), writ denied, 546 So.2d 1222 (La.1989).
[2] It is correct that, ordinarily, a claim of ineffectiveness of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Teeter, 504 So.2d 1036 (La.App. 1st Cir.1987). However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel, it may be addressed on appeal in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
[3] In our order granting certiorari, we (1) directed the trial court to appoint counsel to represent defendant solely for purposes of our grant of certiorari, (2) permitted defendant to act as co-counsel, and (3) allowed defendant to file a brief in addition to that filed by appointed counsel. Defendant filed a pro se brief. We have considered defendant's pro se and counseled briefs.