| iGASKINS, Judge.
The defendant, John M. Davis, was convicted of attempted first degree murder and was sentenced to serve fifty years at hard labor. The defendant appeals his conviction and sentence. For the following reasons, we affirm.
FACTS
On May 15, 1991, the victim, T.M., spent the evening drinking with his friend, Terry Bates, at Frank’s Bar in Tallulah. After this establishment closed at approximately 2:30 a.m. on the morning of May 16, the two men walked to Thurmond’s Bar where they met Gladys Gibbs, an acquaintance of the victim. The group stayed at the bar for several hours drinking and listening to music. Bates, Gibbs and T.M. decided to return to Gibbs’ house in Delhi.
Bates asked several people for a ride to Delhi before finally approaching the defendant, who agreed to give them a ride for $10.00. Bates, Gibbs, and T.M. had never met the defendant, who identified himself as “Black” and informed the group that he was from Vicksburg, Mississippi. The group then departed in defendant’s white mini-van. After arriving at Gibbs’ residence in Delhi, Bates decided to stay overnight with Gibbs. Bates paid defendant more money to take T.M. back to Tallulah.
During the drive to Tallulah, T.M. fell asleep while riding in the passenger seat of the van. He awoke and discovered that the defendant had driven to the Tallulah City Park. Defendant pulled out a gun, pointed it at T.M., and demanded his wallet. T.M. complied, although the wallet did not contain any money. Defendant next ordered him to step out of the van. As he was doing so, defendant also got out of the van and walked around to the passenger’s side where T.M. was standing. Defendant, still brandishing a gun, told T.M. to pull down his pants. He then pushed T.M. down to the ground and forcibly engaged in anal ^sexual intercourse with him. At the conclusion of the sex act, defendant inserted the barrel of the gun inside T.M.’s anus and shot him.
As the result of the injury, T.M. lost consciousness. He later remembered being pushed out of defendant’s van and watching him drive away, thereby concluding that defendant had put him back into the van after the shooting. The victim was unable to stand and was discovered lying near the baseball field in the park on the morning of May 16, 1991. When found, the victim was wearing only a shirt. Articles of his clothing and the contents of his wallet were scattered about the area. An ambulance was called and the victim, near death from blood loss, was transported to Madison Parish Hospital, where he was stabilized and then transferred to E.A. Conway Hospital in Monroe. A hem-icolectomy was later performed on him.
Tallulah Police Detective Willie Turner conducted the investigation of the incident. After interviewing the victim and Bates, Turner developed a suspect profile and concentrated his investigative efforts in Vicksburg, Mississippi. Detective Turner and Detective Donnie Lewis of the Vicksburg Police located defendant in Mississippi, based upon Bates’ description of the mini-van. They pulled defendant over as he was leaving a club and advised him of his rights per Miranda. During the questioning, defendant identified himself as “Black.” Detective Lewis also observed dried blood in the interi- or of defendant’s van. Based on these findings, Detective Lewis arrested defendant and transported him to the Vicksburg Police Department.
While at the police station, defendant agreed to give a taped statement to the authorities. Prior to the statement, he was again advised of his Miranda rights. According to defendant’s statement, he gave Bates, Gibbs, and T.M. a ride for $20.00. Bates then paid him an additional $5.00 to take T.M. back to Tallulah. I3AS the defen *1015 dant and T.M. were en route to Tallulah on Highway 80, the defendant claimed T.M. made sexual overtures to him. Defendant admitted that he then shot T.M. “in his hind part,” pulled to the side of the road, and ordered him out of the van. Defendant stated that, as he was crossing the Mississippi River Bridge on his return to Vicksburg, he threw the gun into the river. When law enforcement officials attempted to ask defendant about the presence of evidence indicating the victim had been sodomized, defendant asked for an attorney and terminated the questioning.
The defendant was returned to Louisiana and was charged by grand jury indictment with attempted first degree murder. The defendant did not testify at trial, but the tape recorded statement was played for the jury. The defendant was found guilty as charged of attempted first degree murder and was sentenced to serve fifty years at hard labor. The defendant appealed his conviction, arguing that the trial court erred in allowing the introduction of an oral statement made by the defendant that had not been provided to him in response to his motion for discovery. He also appeals as excessive his sentence to fifty years at hard labor.
INCULPATORY STATEMENT
The defendant argues that the trial court erred in allowing the introduction of an oral statement by the defendant to Terry Bates that was not provided to him in response to his motion for discovery. This argument is without merit.
After the defendant’s arrest, Terry Bates was taken to the police station in Vicksburg to view a photographic line up. He identified the defendant as the individual he paid to drive the victim from Delhi to Tallulah. Af-terwards, while Bates was waiting in the police station, the defendant entered the room. According to Bates, the defendant stated “that he should have killed me too. And if he knowed [sic] that my friend wasn’t dead he’d have went back and killed him, too.” pThe statement was made directly by the defendant to Bates and was not elicited during the questioning by the police. However, Detective Turner overheard part of the defendant’s statement as he was entering the room.
Prior to the opening statements in this trial, the prosecution gave notice to defense counsel of its intent to use the statement at trial, as required by La.C.Cr.P. art 768. The notice informed the defendant of when, where and to whom the statement was made. In addition, the prosecution informed the defendant of the contents of the statement, an additional element of information not required under La.C.Cr.P. art. 716. The defendant then filed a motion to suppress the statement, arguing that, despite his motions for oyer and discovery, filed several months prior to trial, the state had not disclosed the statement made by the defendant to Bates. The defendant argued that, because the statement had not been properly disclosed, it was not admissible at trial.
The prosecution responded that, in the motion for oyer and the motion for discovery, the defendant failed to request information as to statements made by the defendant to lay persons such as Terry Bates. The defendant requested information only as to the substance of statements made to “a law enforcement officer or the district attorney or agent thereof.” Because Bates was not a law enforcement officer, district attorney or an agent thereof, the prosecution argued that the statement did not fall within the classification of material the defendant requested.
The trial court ruled that the statement was admissible, concluding that the defendant had not requested the statement in his motions for discovery and oyer. The court further found that the prosecution had complied with La.C.Cr.P. art. 768 by giving defendant notice of the statement prior to trial.
|5The pertinent portions of La.C.Cr.P. art. 716 state:
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to *1016 whom such oral confession or statement was made. (Emphasis added.)
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after, arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer. (Emphasis added.)
La.C.Cr.P. art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to the beginning of the state’s opening statement. If he fails to do so a confession or inculpatory statement shall not be admissible in evidence.
La.C.Cr.P. art. 716(B) requires the district attorney, upon motion of the defendant, to inform the defendant of the existence of “any oral confession or statement of any nature” that the defendant made. However, defendant did not make such a motion. In defendant’s motion for discovery, he tracked the language of La.C.Cr.P. art. 716(C) by requesting the substance of any oral statement made in response to interrogation by a law enforcement agent. The state’s witness, Terry Bates, was not such an agent. The testimony clearly showed that the defendant spontaneously confronted Bates and made the statement upon seeing Bates at the police station. Although Detective Turner overheard a portion of the statement, the defendant’s remarks were not given in response to any form of interrogation by a law enforcement official.
In defendant’s motion for oyer, he requested “[a]ny relevant written or recorded statements made by the defendant or copies thereof within the 16possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence, may become known through the State.” (Emphasis added.) However, the statement in question was not written or recorded.
Even though the defendant did not request the type of statement at issue here in his discovery motions, the prosecution gave the defendant timely notice of its intent to use the statement as required by La.C.Cr.P. art. 768. The purpose of giving the defendant sufficient notice of each inculpatory statement that the state intends to use is to permit the defendant a fair opportunity to meet the issue. State v. Jackson, 450 So.2d 621 (La.1984).
We also note that the defendant was aware of the statement prior to the notice of intent filed by the prosecution at the beginning of the trial. At the hearing on the motions for a preliminary examination and to reduce bond, held on August 23,1993, approximately three months prior to trial, Detective Turner testified and repeated the portion of the statement he heard the defendant make to Bates:
Mr. Bates, Mr. Terry Bates, himself was taken over to Vicksburg Police Department and he [the defendant] told Mr. Bates there in the police department, “I should have killed you, too.”
The record shows that the defendant was given timely notice of the prosecution’s intent to use the defendant’s statement to Bates. Further, the defendant failed to request the statement in his discovery motions and the defendant was aware of the statement several months prior to trial. All proper steps were taken in connection with the introduction of this statement at trial. The defendant was given a fair opportunity to meet the issue. Accordingly, we find that the trial court correctly ruled that the statement was admissible. The defendant’s argument to the contrary is without merit.
_[tEXCESSIVE SENTENCE
Defendant argues that the trial court’s imposition of a fifty-year sentence at hard labor was constitutionally excessive. However, a review of the record discloses that defendant failed to file a written motion to reconsider sentence or to orally move for reconsideration at sentencing. La.C.Cr.P. art. 881.1 became effective January 31, 1992, and is applicable to the defendant’s sentence which was imposed on December 22, 1993. *1017 This article precludes the state or defendant from raising an objection to the sentence or from urging any grounds not raised in a motion to reconsider sentence on appeal or review. Because the defendant failed to move for reconsideration, he is barred from attacking his sentence on appeal. State v. Bryant, 607 So.2d 11 (La.App.2d Cir.1992), writ denied, 92-3082 (La. 02/25/94), 632 So.2d 760; State v. Robinson, 27,225 (La.App.2d Cir. 9/27/95), 661 So.2d 527; State v. Williams, 26,655 (La.App.2d Cir. 3/1/95), 651 So.2d 331, writ denied 95-0777 (La. 9/15/95), 660 So.2d 448. Further, he may not now challenge the sentence as being excessive. State v. Jackson, 622 So.2d 1224 (La.App.2d Cir.1993).
We do not read the Louisiana Supreme Court’s opinion in State v. Mims, 619 So.2d 1059 (La.1993), as having obviated the statutory requirement that a motion to reconsider sentence be filed in order to preserve a claim of excessive sentence for appellate review. State v. Jackson, supra; State v. Robinson, supra.
Moreover, even if we were to review the constitutionality of the defendant’s sentence, we find it commensurate with the crime and neither shocks the sense of justice nor constitutes a purposeless and needless infliction of pain and suffering. The maximum sentence for a violation of La.R.S. 14:30 and 14:27, at the time the offense was committed and the defendant was sentenced, was fifty years at hard Rlabor.[1] At sentencing, the trial judge indicated that he had reviewed the presentence investigation report (PSI) and noted that the sentencing guidelines worksheet placed defendant in grid cell 1-A for a recommended sentence range of 360-330 months.[2] The judge discussed defendant’s lengthy criminal history beginning in 1971, which included prison terms on four different occasions at the Mississippi State Penitentiary for convictions of burglary and larceny, assault and battery with intent to kill, and aggravated assault (two separate convictions). Further, the judge noted that after defendant had committed the instant offense and was released on bond, he was arrested and convicted of aggravated assault for shooting an off-duty police officer. The trial judge properly concluded that defendant’s violent criminal history and the heinous nature of the instant offense indicated the defendant had little regard for human life and was deserving of the statutory maximum sentence of fifty years at hard labor.
ERRORS PATENT
The record was reviewed for errors patent on the face of the record. We note that, in imposing sentence, the trial court failed to give defendant credit for any time served in accordance with La.C.Cr.P. art. 880. The defendant’s sentence is amended to allow such credit. State v. Butler, 25,563 (La.App. 2d Cir. 01/19/94), 631 So.2d 22.
|9We also note that the trial judge did not properly inform the defendant of the prescriptive period for post-conviction relief. The trial court informed the defendant as follows:
Now then, no application for post-conviction relief including application [sic] which seek out of time appeal will be considered if filed more than three years after this, after your judgment of conviction and sentence has become final. That is five days from now,....
The trial judge’s statement implied that defendant’s sentence and conviction would become final five days from the date of sentencing, thereby beginning the running of the three-year prescriptive period. However, the prescriptive period does not begin to run until judgment is final under La.C.Cr.P. arts. *1018 914 or 922. Thus, prescription has not yet begun to run. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Gladney, 626 So.2d 778 (La.App. 2d Cir.1993). To insure that defendant understands the correct prescriptive period for post-conviction relief, the district court is directed to send written notice to defendant within 10 days of the rendition of this opinion and to file proof of defendant’s receipt of such notice in the record of the proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 746 (La.App. 2d Cir.1992).
CONCLUSION
For the reasons stated above, we affirm the conviction of the defendant, John M. Davis. We also affirm the defendant’s sentence of fifty years at hard labor and amend the sentence to allow credit for time served.
AFFIRMED.

. La.R.S. 14:27 was amended by Acts 1995, No. 988, § 1, to provide that the penalty for an attempt to commit an offense that is punishable by death or life imprisonment is not less than ten nor more than fifty years without benefit of parole, probation or suspension of sentence. At the time the sentence was imposed in this case, prior to the amendment, the penalty under such circumstances was not more than fifty years.

. The sentencing guidelines were repealed by Acts 1995, No. 942, which became effective August 15, 1995. However, the guidelines were still in effect at the time of defendant’s sentencing.