714 So.2d 1277 (1998)
STATE of Louisiana, Plaintiff-Appellee,
v.
Deshawn BRANCH, Defendant-Appellant.
No. 30733-KA.
Court of Appeal of Louisiana, Second Circuit.
July 6, 1998.
Rehearing Denied August 13, 1998.
*1280 Wilson Rambo, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Robert Stephen Tew, Assistant District Attorney, for Plaintiff-Appellee.
Before NORRIS, HIGHTOWER and PEATROSS, JJ.
NORRIS, Judge.
Deshawn Branch, defendant, was convicted for possession of twenty-eight grams or more, but less than two hundred grams of cocaine in contravention of La. R.S. 40:967 F(1)(a). Branch appeals; we affirm the conviction, and amend and affirm the sentence.

I.
On November, 19, 1996, Lt. Pat Stewart of the Monroe Police Department received a call from a confidential informant that a black male wearing a black hat, a black jacket, carrying drugs and a firearm, and standing on the 2700 block of Lee Avenue, a high-crime area, was possibly involved in a recent bank robbery. Pursuant to that information, several officers were directed to stop and interview the suspect. The officers arrived upon the scene in marked police vehicles and spotted the suspect who matched the exact description provided by the informant. Before the police could approach or give any orders to stop or halt, the suspect ran. The police gave chase and restrained the suspect, later identified as Branch. During a struggle with the officers, Branch reached for a handgun tucked behind his jacket and in the small of his back; he was immediately exposed to OC or pepper spray.
He was cuffed, arrested for carrying a concealed weapon, and read his Miranda rights. A search subsequent to the arrest revealed 4½ ounces of crack cocaine, an electronic scale, $676 in cash, and a pocket knife found on his person.
While being transported to the police station, he told the officers that he was a drug dealer intending to sell the $3500 of cocaine that he had been fronted with for a profit, and that he would not have shot a "brother," referring to one of the officers.
Branch was charged with possession of four hundred grams or more of cocaine; the bill was later amended to the instant charge. An attorney appointed to represent the indigent Branch filed motions for discovery, preliminary examination and to suppress the fruits of the search and statements.
Prior to the hearing on the motion to suppress, Branch filed a motion to represent himself, asserting that having been apprised of the dangers of self-representation, he still wished to discharge his attorney. The trial court held a hearing and found a knowing and intelligent waiver of the right to representation. However, Branch made it clear that at that time, he only sought to waive his right to representation for purposes of the suppression hearing. Nonetheless, on the eve of trial, Branch again asserted his desire to waive his right to representation and to discharge his attorney. After another hearing, the District Court again determined that the waiver was knowingly and intelligently made and discharged his attorney from any further responsibility.
After the case had been submitted, a unanimous jury returned a verdict of guilty as charged. The District Court then sentenced Branch to 18 years at hard labor without benefit of probation, parole, or suspension of sentence.[1]
*1281 Branch has appealed pro se; the District Court also ordered the Louisiana Appellate Project to represent him on appeal, although he had earlier rejected their assistance.[2] We therefore consider the assignments of error raised in both briefs. Cf. State v. Anderson, 29,282 (La.App.2d Cir. 6/18/97), 697 So.2d 651.

II.
By his first (Appellate Project) assignment, Branch contends there exists insufficient evidence to support a conviction.
When the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews sufficiency, as a failure to satisfy the Jackson standard will moot the trial errors. State v. Hearold, 603 So.2d 731 (La.1992); State v. Adams, 30,815 (La.App.2d Cir. 6/24/98), 715 So.2d 118.
The Constitutional standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); La.C.Cr.P. art. 821.
The essential elements of the charged offense consist of a (1) knowing or intentional possession, (2) of 28 grams or more but less than 200 grams, (3) of cocaine.[3] La. R.S. 40:967 F(1)(a).
Branch only argues that no evidence was presented regarding the weight of the cocaine found on his person. This assignment is devoid of merit. At trial, Lt. Stewart and Officer Slakter both testified that the seized cocaine weighed 4½ ounces, which equates to over 127 grams. Moreover, state's exhibit # 1 consisted of the seized cocaine for the jury to evaluate, in addition to the pictures depicting the cocaine.
The elements of possession and cocaine are satisfied as well. Several officers testified that they found the cocaine in Branch's pockets in addition to Branch's statement that he was a drug dealer. Also, Linda Armstrong, director of the North Louisiana Crime Lab and an expert in the identification of controlled dangerous substances, testified that she had analyzed the seized substance and it was in fact cocaine.

III.
Assignments of error No. 2 and 3 (Appellate Project) contest two incidents in which Branch waived his right to counsel in favor of self-representation. Branch argues that the trial court erred in failing to adequately advise him as to the dangers and disadvantages of self-representation and failed to conduct a sufficient colloquy to determine whether there was a knowing and intelligent waiver of his right to counsel.
The accused in a criminal proceeding has the right to assistance of counsel for his defense. U.S. Const. Amends. VI, XIV; La. Const. art. I, § 13; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
A valid waiver of the right to counsel must be knowing and intelligent. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Although a defendant need not himself have the skill and experience of a lawyer to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages *1282 of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open. State v. Dunn, 30,269 (on reh'g) (La.App.2d Cir. 5/15/98), 713 So.2d 479; see also State v. Moore, 29,212 (La.App.2d Cir. 1/22/97), 687 So.2d 647. A trial judge must determine whether the assertion of his right to represent oneself is clear and unequivocal. State v. Strain, 585 So.2d 540 (La.1991). The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. State v. Strain, supra, citing Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Absent a knowing and intelligent waiver of this right, no person may be imprisoned unless represented by counsel at trial. State v. King, 96,1286 (La.App. 3d Cir. 10/8/97), 702 So.2d 814 and citations therein.
Moreover, the adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. The propriety of allowing a defendant to make this election is not judged by what happens in the subsequent course of the representation. State v. DeGrate, 25,732 (La.App.2d Cir. 3/30/94), 634 So.2d 965, writ denied 94-1362 (La.App.2d Cir. 10/7/94), 644 So.2d 630.
In the instant case, Branch twice asserted his right to self-representation.[4] Each time the District Court carefully questioned him to determine if his waiver was knowing and intelligent, and advised him of the seriousness of his decision.
Prior to the suppression hearing, Branch asserted that he wanted to waive his right to counsel and represent himself. The resulting colloquy revealed that Branch was 26 years of age, completed high school and two semesters of college, and had spent the prior three months reading the Louisiana Code of Criminal Procedure. In addition, the court specifically asked Branch if he knew about the types of pretrial motions, could prepare and file these and other motions, and had knowledge about the Code of Evidence. The District Court also reminded Branch that his court appointed attorney was very experienced and that the crime charged carried a minimum term without probation, parole, or suspension of sentence. Thereafter, Branch clearly asserted his right to represent himself for purposes of the suppression hearing. The court granted Branch's request, but had his court appointed attorney available in the courtroom to provide advice if requested.
On the morning of trial, Branch again asserted his right to represent himself and to waive his right to counsel. The court again had Branch sworn, recited the crime with which he was charged, and specifically noted the minimum sentence, thereby alluding to the seriousness of the possible consequences. The court informed Branch that his court-appointed attorney was very experienced and had more knowledge than Branch. The court then inquired into Branch's knowledge concerning the evidentiary rules and criminal procedure. Branch was able to cite certain articles, and knew how many jurors were required to convict him. Branch admitted that someone like himself was much more likely to make mistakes, but continued to reiterate that he had been studying the legal rules. The court inquired into Branch's knowledge concerning the procedure for asking witnesses questions and whether or not he had been taking any medication.
The court informed Branch of the pitfalls of self-representation. The court explained that he is at a greater risk to testify or make an admission in the course of questioning a witness, and thereby waive his Fifth Amendment right.
Despite the court's warnings, Branch stated that he wanted to discharge his attorney altogether and would not anticipate having to ask the attorney any questions during the course of the trial. The court found that *1283 Branch displayed sufficient comprehension of his actions and the serious consequences of the waiver. The attorney appointed to represent Branch was subsequently discharged.
The record supports the trial court's finding that Branch knowingly and intelligently elected to waive his right to appointed counsel. Nothing in the colloquy nor in the brief suggests that he did not fully understand the significance of the waiver of counsel. The District Court was extremely thorough in questioning Branch and in informing him of the dangers. Therefore, the court did not err in allowing Branch to waive his right to counsel.

IV.
By his fourth assignment, pro se, Branch urges "any and all errors previously assigned by Appellant in those pro se filings in State of Louisiana v. No. 30, 382-KH De Shawn Branch, * * * including specifically Appellant's motion to strike, motion for due process and motion to recuse Judge Benjamin Jones." By subsequent pro se filing (February 27, 1998) in the instant record, Branch asks this court not to abandon the errors raised in his writ application; however, he supplies no new arguments. On August 15, 1997, this court denied Branch's application for PCR except to remand to the District Court on the issue of an out-of-time appeal. Because we did not address the substance of the arguments as advanced in the PCR application, we will consider them now.

Motion to Suppress
Branch assigns as error the District Court's denial of his motion to suppress. The trial judge stated that the police were justified in proceeding to the scene to make an investigatory stop; upon arrival, the circumstances allowed them to pursue Branch; once the gun became visible, an arrest was appropriate; and a search incident to arrest revealing the drugs and the drug paraphernalia was legal. The court also ruled that Branch's statements made subsequent to the arrest were admissible.
Foremost, Branch contends that no probable cause existed to stop, search, or arrest him because the police fabricated the information provided by the confidential informant. Branch's argument fails to take into account the legal distinctions among stops, searches, seizures, and arrests.
Even without probable cause to arrest, law enforcement officers have the right to stop and interrogate a person they reasonably suspect is "committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." La.C.Cr.P. art. 215.1; State v. Flanagan, 29,316 (La. App.2d Cir. 4/2/97), 691 So.2d 866, and citations therein. Reasonable suspicion required for an investigatory stop is something far less than probable cause required for an arrest. Taylor v. City of Shreveport, 26,820 (La.App.2d Cir. 4/7/95), 653 So.2d 232, writ denied 95-1131 (La.6/16/95), 655 So.2d 333. The totality of the circumstances must be considered in determining whether there is requisite reasonable suspicion to justify an investigatory stop. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048.
An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. State v. Miskel, 95,584 (La.App. 5th Cir. 1/30/96), 668 So.2d 1299 and citations therein; State v. Wyatt, 462 So.2d 244 (La.App. 2d Cir.1984). Flight, nervousness, or a startled look at the sight of a police officer will not alone justify an investigatory stop; however, such conduct may be highly suspicious and contribute to a finding of reasonable suspicion. State v. White, 27,188 (La.App.2d Cir. 8/23/95), 660 So.2d 515. The suspect's presence in a high-crime area, coupled with flight and the other factors described above, may also contribute to reasonable suspicion to make an investigatory stop. Id. To assess the validity of an investigatory stop, the critical inquiry focuses on the officer's knowledge at the time of the stop. Id.
Police officers making a valid Terry[5] or investigatory stop can use reasonable *1284 force under the circumstances to effectuate the stop or "seizure" even though it does not amount to an arrest. State v. Solomon, 93,1199 (La.App. 3d Cir. 3/2/94), 634 So.2d 1330 citing State v. Wade, 390 So.2d 1309 (La.1980), cert. denied 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981); see also State v. Allen, 93,838 (La.App. 5th Cir. 5/31/94), 638 So.2d 394, writ recalled 94-1754 (La.3/16/95), 651 So.2d 1343. Moreover, police actions taken in self-defense are not to be treated as investigatory stop procedures. See State v. Randolph, 95-1447 (La.App. 4th Cir. 5/8/96), 674 So.2d 413, writ denied 96-2159 (La.8/27/97), 699 So.2d 59.
In this case, Lt. Stewart testified that he had received a call from a confidential informant whose information had proven reliable in the past and had served as a basis for prior felony arrests and convictions. The information supplied by the confidential informant particularly described Branch's dress, location, the fact that he was armed, carrying drugs, and possibly involved in a recent bank robbery. In addition, Lt. Stewart testified that the information describing the suspect matched his intelligence reports concerning the bank robberies. Shortly after receiving the information from the informant, the police went to the location described to conduct an investigatory stop. They spotted Branch in the location specified, testified to as a high-crime and drug-dealing area, and wearing the described attire. The culmination of the intelligence reports, the accurate information supplied by the informant who had proven to be reliable in the past and Branch's presence in a high-crime area supplied reasonable suspicion for the police to conduct an investigatory stop.
Nevertheless, Branch fled the scene before an investigatory stop could be made. The flight further contributed to the reasonable suspicion. Officer Staten testified that when his unit approached the scene, Branch made eye contact with the police officers and broke into a full sprint. The police gave chase on foot, with one officer catching up to and restraining Branch by grabbing him around the waist. Branch ignored the order to "lay down," struggled, fought, and then knocked the officer to the ground. The second officer saw Branch reaching for a handgun which had previously been concealed under his coat; Branch was then forced to the ground.
On these facts, the police clearly had reasonable suspicion to pursue and restrain Branch to conduct the stop. Because Branch struggled, knocked one of the officers to the ground, and then reached for a firearm, the police could take effective measures to ensure their safety including forcing Branch to the ground. Branch's violent resistance escalated the amount of reasonable force the police could use to effect the investigatory stop and to defend themselves. The force used to execute the stop was reasonable under the circumstances.
Branch argues that the informant's tip could not supply the probable cause to effect the arrest.[6] However, he fails to consider that it was his act of carrying a concealed firearm,[7] one of the charges upon which he was booked, that supplied the probable cause for his arrest. Because there was probable cause to arrest Branch for carrying a concealed weapon, the search incident to arrest was legal. State v. Young, 93,0414 (La.App. 4th Cir. 8/17/94), 642 So.2d 255. Therefore, the search revealing the drugs and drug paraphernalia was proper and the District Court did not abuse its discretion in denying the defendant's motion to suppress the seized drug evidence.
*1285 Similarly, the District Court did not abuse its great discretion in ruling that the statements made to the police subsequent to the arrest were admissible. The court simply accorded more weight to the officer's testimony that the Miranda warnings were read over Branch's contrary testimony.

Right to Confront
Branch argues that his right to confront and cross-examine the confidential informant has been violated. See U.S. Const. amend. VI; La. Const. art. 1, § 16. Louisiana has a strong public policy in favor of protecting the identity of confidential informants. State v. Dukes, 609 So.2d 1144 (La. App. 2d Cir.1992). The defendant bears the burden of showing exceptional circumstances which would require divulging a confidential informant's identity, and the trial court has much discretion in deciding whether disclosure is warranted. State v. Harris, 28,517 (La.App.2d Cir. 8/21/96), 679 So.2d 549, writ denied 96-2954 (La.9/26/97), 701 So.2d 975. A showing that the informant participated in the crime constitutes an exceptional circumstance requiring disclosure. State v. Thompson, 27,543 (La.App.2d Cir. 12/6/95), 665 So.2d 686. In this case, Branch himself had the opportunity to question the police concerning the informant's background, character, and whether the informant had been paid. Not only did Branch fail to demonstrate any exceptional circumstances at the suppression hearing, he failed to even file a motion to discover the identity of the informant. This alleged error lacks merit.

Probable Cause Determination
Branch additionally argues that the trial judge failed to hold a required probable cause determination within 48 hours of his warrantless arrest where he was continued in custody, in contravention of La.C.Cr.P. art. 230.2. The record clearly shows that an affidavit of probable cause was completed and submitted to a judge within 24 hours after the arrest. This assignment lacks merit.

Discovery Violation
Prior to the suppression hearing, counsel for Branch filed a motion for discovery and inspection, specifically requesting in ¶ 18 statements made by an informer. The state answered that it would supplement its answer to ¶ 18 by giving notice of its intent to introduce at trial any and all statements disclosed in any pretrial hearings; no specific mention of a confidential informant was then noted. Less than two months later at the suppression hearing, Lt. Stewart testified that a confidential informant had tipped him off to Branch.
Branch argued at the suppression hearing and again on appeal that the prosecutor failed to timely disclose information concerning the existence of an informer and the informer's statements. However, we find that a plain reading of the state's answer shows that it substantially complied with discovery. Each party has a continuing duty to promptly disclose additional evidence. State v. Hill, 601 So.2d 684 (La.App. 2d Cir.), writ denied 608 So.2d 192 (1992). In this case, the state averred that if additional evidence concerning an informant existed, it would be disclosed at any pretrial hearings. The pretrial suppression hearing disclosed the information concerning the informant two months before trial. No showing was made that the prosecutor possessed but failed to deliver this information prior to the suppression hearing. Even if a discovery violation occurred, no prejudice was shown; in the absence of prejudice, sanctions are not imposed. State v. Powell, 598 So.2d 454 (La. App. 2d Cir.), writ denied 605 So.2d 1089 (1992). Additionally, any discovery error was harmless because the information was provided more than two months in advance of trial. See State v. Taylor, 30,310 (La. App.2d Cir. 2/25/98), 709 So.2d 883.

Motion to Recuse
Prior to trial, Branch filed a motion to recuse Judge Benjamin Jones, generally alleging bias and prejudice. In accordance with La.C.Cr.P. arts. 674, 675, another District Judge heard the motion and issued a written ruling denying the motion.
A trial judge is presumed impartial and the burden is on the defendant to prove otherwise. State v. Jackson, 30,473 (La.App.2d Cir. 5/18/98), 622 So.2d 1224. For *1286 an accused to be entitled to recusation on the grounds of bias, prejudice or personal interest, such grounds must be of a substantial nature and based upon more than mere conclusory allegations. State v. Anderson, 29,282 (La.App.2d Cir. 6/18/97), 697 So.2d 651; La.C.Cr.P. art. 671 A(1).
Branch argues that bias and prejudice were shown by the court's refusal to rule on his seven pro se motions.[8] We note, however, that these motions chiefly reiterated arguments that were advanced in the motion to suppress and dismissed by the District Court in ruling on that motion.
The remaining motion, one for speedy trial, was defective because it lacked a proper affidavit as set forth in La.C.Cr.P. art. 701 D(1). In addition, his actions in twice changing his status from represented to unrepresented, and filing motions to suppress and recuse delayed his own motion and amounts to "just cause" for the delay. See State v. Gale, 526 So.2d 861 (La.App. 4th Cir.1988); State v. Leonard, 499 So.2d 585 (La.App. 2d Cir.1986). Furthermore, he went to trial 182 days after his arrest in a District Court with a busy docket. We also note that his only remedy for an Art. 701 violation is a release from his bail obligation; if any violation occurred, his conviction renders it moot. State v. Hebert, 29,062 La.App.2d Cir. 1/22/97), 688 So.2d 612, writ denied 97-0497 (La.9/5/97), 700 So.2d 503.
Branch concludes bias and prejudice based upon Judge Jones's rulings at the suppression hearing. However, the record does not support any of these claims that the trial judge was biased against Branch. Accordingly, there is no merit to this assignment.

V.
By his fifth (Appellate Project) assignment, Branch urges the District Court erred in instructing the jury regarding the "informer privilege." However, this assignment has been neither briefed nor argued, so it is deemed abandoned. URCA rule 2-12.4; State v. Taylor, supra.

VI.
Finally, the sixth and seventh (Appellate Project) assignment of errors relate to the imposition of excessive sentence and the failure of the District Court to comply with the sentencing requirements of La.C.Cr.P. art. 894.1.
Because Branch was self-represented, the court recited the highlights of the presentence investigation ("PSI") report and offered Branch several opportunities to comment on them and to make a statement prior to sentence.[9] Branch declined and instead chose to argue that he was "framed" by the police and "railroaded" by the court. The court stated that it would impose sentence without regard to Branch's belligerence and lack of deference during the sentencing and his refusal to assist the probation officer with the PSI. After reciting the sentencing scheme in La. R.S. 40:967 F(1)(a)[10] and § 967 G,[11] and being constantly interrupted by Branch while considering both aggravating and mitigating factors listed in La. C.Cr.P. art. 894.1, the court imposed a sentence of 18 years at hard labor without benefit *1287 of probation, parole, or suspension of sentence subject to credit for time served.
Branch failed to file a motion to reconsider sentence as required by La. C.Cr.P. art. 881.1. The failure to make or file a motion to reconsider sentence relegates the defendant to the bare claim that the sentence is constitutionally excessive. State v. Duncan, 30,453 (La.App.2d Cir. 2/25/98), 707 So.2d 164. The fact that Branch represented himself does not change this result.
We do not find this sentence excessive where Branch was discovered with over 100 grams of cocaine, admitted that he was a drug dealer, and attempted to use his firearm against the police officers. The PSI indicates that Branch was convicted of possession of cocaine for sale in California, and sentenced to three years probation which was revoked. He has a long criminal record, mostly concerning drugs, thefts, and firearms. Both the police officers involved and the probation officer recommended that Branch be sentenced to a lengthy term of imprisonment. Branch has shown neither remorse for the crime nor respect for the legal system. The sentence of 18 years does not shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980).
Although we do not find the sentence constitutionally excessive or shocking to our conscience, the sentence may be illegally harsh. The "minimum sentence" of 10 years imposed under La. R.S. 40:967 F(1)(a) shall be served without benefit of probation, parole or suspension of sentence. La. R.S. 40:967 G. The District Court sentenced Branch to all 18 years without benefit. Branch argues that the sentence is illegal, and the State essentially concedes that it is citing State v. Wimberly, 95,1445 (La.App.4th Cir.7/24/96), 678 So.2d 577, writ denied 97-2255 (La.3/13/98), 712 So.2d 872. Under these circumstances, we find that the sentence is illegally harsh.
An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La.C.Cr.P. art. 882. We amend the sentence to reflect that only the first 10 years of his 18 year sentence shall be served without probation, parole, or suspension of sentence. See also State v. Mock, 602 So.2d 776, 779 (La. App. 2d Cir.1992).

VII.
For the aforementioned reasons, we affirm the conviction. We amend the sentence to limit the ineligibility for probation, parole, or suspension of sentence to the duration of the minimum sentence required to be served under La. R.S. 40:967 F(1)(a), i.e. 10 years.
CONVICTION AFFIRMED; SENTENCE AMENDED.
HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, Judge, concurring.
Although concurring in the result, I do not reach the evidence-sufficiency complaint, an issue not properly before us after the defendant failed to present a post-trial motion for acquittal to the district court. See La. C.Cr.P. art. 821; State v. Hall, 624 So.2d 927 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1182 (La.1993); Bates v. Blackburn, 805 F.2d 569 (5th Cir.1986), cert. denied, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). See also discussion in concurrence to State v. Green, 28,994 (La.App.2d Cir. 02/26/97), 691 So.2d 1273, and authorities therein.
Likewise, having failed to move for reconsideration as required by La.C.Cr.P. art. 881.1, the defendant is barred from attacking his sentence on appeal. State v. Harris, 28,517 (La.App.2d Cir. 08/21/96), 679 So.2d 549; State v. Davis, 28,075 (La.App.2d Cir. 05/08/96), 674 So.2d 1013; State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir.1993), writ denied, 94-0201 (05/16/94), 637 So.2d 1046; State v. Jackson, 622 So.2d 1224 (La.App. 2d Cir.1993); State v. Garth, 622 So.2d 1189 (La.App. 2d Cir.1993); State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992), writ denied, 92-3082 (La.02/25/94), 632 So.2d 760.
Nor does the Louisiana Supreme Court's opinion in State v. Mims, 619 So.2d 1059 (La.1993) (wherein the defendant presented a motion for reconsideration at the trial court level), obviate the statutory requirement that a motion to reconsider sentence be filed in *1288 order to preserve an excessive sentence claim for appellate review. State v. Jackson, supra. Even so, in view of the state conceding that the present sentence is illegal, it is appropriate that we correct that illegality.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, BROWN, WILLIAMS and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] The sentencing transcript shows that the court additionally imposed a $1,000 fine, default time of 90 days imprisonment or in lieu thereof, 80 hours of community service. Because § 967F(1)(a) mandates a fine of not less than $50,000 nor more than $150,000, the imposition of the $1000 fine is illegally lenient. However, the imposition of the fine is not contained in the judgment or the minutes, nor in any appellate brief, and therefore it appears that there was no fine actually imposed. Whether or not a fine of $1000 was imposed, the sentence is illegally lenient. See State v. Hills, 626 So.2d 452 (La.App. 4th Cir. 1993). Because the State failed to timely complain, this court may not correct the illegally lenient sentence. State v. Dunn, 30,346 (La. App.2d Cir. 2/25/98), 708 So.2d 512, citing State v. Fraser, 484 So.2d 122 (La. 1986).
[2] Any potential error in allowing Branch to represent himself on appeal without another determination of the validity of the waiver to right of counsel (see State v. Warner, 594 So.2d 397, 403 (La.App. 1st Cir.1991), writ denied 600 So.2d 668 (La.1992)), and to order the Louisiana Appellate Project to "represent" Branch on appeal, was harmless.
[3] The statute also encompasses possession of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964
[4] He also asserted his right to self-representation on appeal. However, the circumstances of the representation on appeal have not been raised as an assignment of error. See supra text accompanying note 2.
[5] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also La.C.Cr.P. art. 215.1.
[6] Because the informant's statement was not the source of the probable cause to affect the arrest, the omission of any reference to an informant in an affidavit of probable cause for warrantless arrest appears justified. Thus, Branch's allegation that the police fabricated the existence of an informant was correctly dismissed by the trial court.

Likewise, Branch argued that the police should have presented the confidential informant to the trial judge for questioning before determining whether probable cause exists citing La. R.S. 15:1310(B). However, that statute relates to the procedure for obtaining a wire tap. State v. Neisler, 94-1304 (La.1/16/96), 666 So.2d 1064. Because there is no wire tap involved in the instant case, the trial court was correct in dismissing this argument as well.
[7] See La. R.S. 14:95.
[8] The motions include motion for rehearing, motion for production of statements, motion to strike, motion for habeas corpus, "motion for due process," "motion for declaration of rights," and motion for speedy trial.
[9] The routine procedure, as explained by the District Court, is for both the defense attorney and the judge to review the PSI together and check for any errors or omissions prior to imposing sentence. Because Branch was self-represented, the court declined to employ that practice off the record and in chambers because of the potential volatility in having an incarcerated defendant review his own PSI, as opposed to having an attorney review a client's PSI.
[10] La. R.S. 40:967 F(1)(a) provides that the sentence shall be a "term of imprisonment at hard labor of not less than ten years, nor more than sixty years, and to pay a fine of not less that fifty thousand dollars, nor more than one hundred fifty thousand dollars."
[11] With respect to any person to whom the provisions of Subsection F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F. La. R.S. 40:967 G.