688 So.2d 612 (1997)
STATE of Louisiana, Appellee,
v.
Ernest Drew HEBERT, Appellant.
No. 29062-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
*614 Lavelle B. Salomon, for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, J. Michael Ruddick, Assistant District Attorney, for Appellee.
Before NORRIS, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
Defendant, Ernest Drew Hebert, was convicted of armed robbery, La. R.S. 14:64, and sentenced to ten years at hard labor. Defendant has appealed his conviction and sentence. We affirm.

Facts
In March 1994, defendant was a student at Northeast Louisiana University in Monroe, Louisiana, and a part-time employee of Only a Buck, a business located in the West Monroe Plaza. On March 25, 1994, the West Monroe Police Department received a call that an armed robbery had just occurred at Only a Buck. Upon their arrival, the police questioned the two employees on duty when the robbery occurred, Laverne Hill and defendant. The officers took statements from both employees and quickly became suspicious of defendant, who was arrested later that night, along with his former roommate, Keith Jones.

Laverne Hill's Testimony
In March 1994, Laverne Hill was an assistant manager at Only a Buck and defendant was a part-time stock person and cashier. Ms. Hill stated that defendant had been employed at Only a Buck for about six months.
Fridays and Saturdays were the store's busiest days. On Friday, March 25, 1994, defendant and Ms. Hill closed the store at approximately 6:00 p.m. Ms. Hill testified that while she counted the money from the day's sales in the rear of the store, defendant took the trash out back. According to Ms. Hill, taking the trash out was part of defendant's daily duties. On that Friday, however, when defendant came back into the store, there was a man behind him.
Ms. Hill stated that at first she assumed defendant knew the other man because the two of them appeared very calm. The second man walked behind defendant toward Ms. Hill. They were walking very slowly, and as the two neared Ms. Hill, she saw that the second man was wearing dark clothing, a baseball cap and a dark blue bandanna over his face. As the two men approached, defendant stepped aside and the masked man pointed a chrome, black-handled gun in Ms. Hill's face and told her not to look at him. Ms. Hill stated that defendant urged her to comply with the man's demands and to get down on the floor.
Ms. Hill sat down in a chair and defendant got down on his knees and began praying aloud that they would not be shot. Ms. Hill stated that she was not afraid until defendant started praying, because until that time the robbery did not seem real to her. She testified that the masked man took the money from the register, apparently taking time to count it. He told Ms. Hill and defendant that he would shoot them if they left the building, then exited through the back door.
Ms. Hill testified that defendant did not want her to leave the store, saying that the robber would shoot them. Despite defendant's warning, she went to an adjacent business establishment and called the police. She testified at trial that the robber took approximately $600-700.
According to Ms. Hill, for approximately three weeks prior to the robbery, defendant had parked his car, a white Ford Mustang, behind the store when he came to work. Ms. Hill stated that employees normally only go *615 behind the store to retrieve deliveries and that she parked her own car in the front of the store, as had defendant up until three weeks before the robbery.

Detective Lawrence Moore's Testimony
West Monroe Police Officer Lawrence Moore, the detective who investigated the robbery of Only a Buck, interviewed both Ms. Hill and defendant after the robbery. Defendant related that after he deposited the trash, an unidentified black male stuck a gun to the side of his head and ordered him to walk back into the store. Defendant reported seeing a red Chevrolet Cavalier in the rear parking lot; however, the vehicle was no longer there when the officers arrived. An alert was issued for a car matching the description given by defendant, though no such vehicle was ever found. After taking the employees' oral statements, Detective Moore took recorded statements from both at the police department. After giving his statement, defendant left the police station.
Detective Moore stated that he had observed conflicts in the statements and that he wanted to see what defendant's next move would be. Det. Moore followed defendant from the West Monroe Police Department to a dormitory at Northeast Louisiana University. Defendant got out of his car and went into Room 107. Det. Moore then observed defendant leaving Room 107 with a black male who roughly matched the physical description of the gunman at Only a Buck. The two men went briefly upstairs to Room 245 before returning to Room 107.
N.L.U. campus police were called for backup; Det. Moore and the responding officers knocked on the door to Room 107. Keith Jones, the registered occupant of 107, answered the door. After being informed of his constitutional rights, Jones chose to speak to the officers and confessed to them his involvement in the robbery. A search of Jones' room revealed a black sweatshirt in the closet; however, a blue and white bandanna was not found.
Jones led the officers to the money, which was stuffed in a sofa in Room 108, an adjoining dorm room, and he turned over to the officers two handguns. Jones told the officers that defendant was involved in the robbery; based on this information, the officers arrested both Jones and defendant.
Detective Moore testified that he did not recover any of the checks reported stolen from Only a Buck; he believed that the checks had been burned in the bathroom between Jones' room and the adjoining suite. Ms. Hill subsequently identified Jones as the gunman who robbed the store from a photo lineup.
On cross-examination, Det. Moore admitted that the handguns seized from the dorm room were black, not chrome, and that they belonged to Keith Jones, not defendant. He also admitted that Ms. Hill had originally reported approximately $400 stolen, not the $600-700 she testified to at trial. Neither the money nor the guns were examined for fingerprints. Detective Moore stated that because currency is handled so frequently, it normally does not yield legible prints.

Keith Jones' Testimony
Keith Jones testified that in March 1994, he was a full-time student at N.L.U. and that he worked at the school as a custodian. Jones stated that he and defendant were roommates for approximately a year; however, as Det. Moore testified, at the time of the robbery, defendant lived off-campus.
Jones testified that defendant first suggested that they rob the store approximately two months prior to the robbery. Defendant took Jones to the store and showed him the back exit. Defendant wanted to rob the store on a Friday, the day that the store took in the most money. On March 25, 1994, before defendant left for work, the two decided to rob the store that evening.
Jones stated that he got a ride to West Monroe from someone he knew as "Carlton Kong" (Roderick LaFitte). Jones took a loaded 9 mm handgun with him. Kong parked his car at a fast food restaurant within walking distance of Only a Buck.
Jones got out of Kong's car and walked to Only a Buck; he then sat in defendant's car until defendant walked out of the store's back door with the trash. Jones stated that defendant told him to hurry up, at which time *616 he tied the bandanna around his face and went into the store behind defendant.
Jones testified that there was only one other person in the store; she was sitting on the desk, counting money. Jones told her to "sit down and be quiet, don't look at me, just give me the money." He took the money, yanked the phone lines out of the wall, told the store employees not to look at him and not to go anywhere, then left. He walked back to where Kong's car was parked and rode with him back to N.L.U.
Upon returning to Room 107, Jones burned the checks he had taken from the store and divided the cash between himself and defendant. After splitting up the money, he and defendant briefly visited a friend's upstairs dorm room. When they left Room 245 to return to Jones' room, they saw the police pulling into the parking lot.
At that point, Jones and defendant hid the money and guns in the room adjoining Jones'. According to Jones, the occupants of the adjoining suite were not involved in the robbery.
On cross-examination, Jones admitted that he initially lied to the police by telling them that he knew nothing about the robbery and that he had given his gun to a relative. Jones also claimed that he did not know the source of the marijuana that the officers found in the box where Jones had hidden his guns.
Jones denied having told defendant's attorney that he had robbed the store and that he had made arrangements with Kong to do so; however, he did admit to having talked to defendant's attorney. Jones stated that he told defense counsel that while in jail prior to defendant's trial, defendant had threatened his life if Jones did not "sign some papers" for defendant. Jones denied telling defendant's attorney that defendant had nothing to do with the robbery.
Defense counsel introduced into evidence a document signed by Jones which stated that defendant was not involved in any way in the robbery of Only a Buck. Jones testified that defendant, who was imprisoned in the same facility, had sent word that he would kill Jones if he did not sign the affidavit. Jones stated that at the initial meeting with defendant's attorney he had refused to sign the affidavit, but thereafter, he learned of defendant's threat and signed the paper.

Verdict and Sentencing
In just over an hour, the jury convicted defendant of armed robbery.
Defendant pled guilty to violating his probation for attempted simple robbery by virtue of the instant armed robbery conviction. The court sentenced defendant to ten years at hard labor on the instant conviction, to run consecutively with the 3 ½-year hard labor term he received for his probation violation. This appeal ensued.

Discussion
Defendant initially designated 14 assignments of error; however, only four are argued on appeal. To the extent that any assigned error is not briefed, it is deemed abandoned. U.R.C.A. 2-12.4; State v. Hattaway, 28,060 (La.App.2d Cir. 05/08/96), 674 So.2d 380.

Sufficiency of the Evidence
Defendant asserts that the evidence was insufficient to sustain his armed robbery conviction.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La. 1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 *617 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
La. R.S. 14:64(A) provides that armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In this case, defendant was charged as a principal. La. R.S. 14:24 provides that all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.02/03/94), 631 So.2d 427. Mere presence at the scene is not enough to "concern" an individual in the commission of the offense. Id; State v. Knowles, 392 So.2d 651 (La.1980). An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Pierre, supra; State v. Holmes, 388 So.2d 722 (La.1980).
Armed robbery is a general intent crime. State v. Battieste, 597 So.2d 508 (La. App. 1st Cir.1992), vacated in part on other grounds, 604 So.2d 960 (La.1992). Thus, in the instant case, the state was required to prove that defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).
According to defendant, the state failed to prove that he was a principal to the armed robbery committed by Keith Jones. Defendant asserts that although Jones stated that he was involved in the planning of the crime, Jones did not say that defendant desired that Jones use a dangerous weapon. Defendant claims that at best he was guilty only of simple robbery, citing State v. Smith, 450 So.2d 714 (La.App. 4th Cir.1984).
In State v. Smith, two brothers robbed a shoe store after posing as customers. Neither brought a weapon into the store. Haley Smith reached into the store's cash drawer to retrieve some money and told his brother Rodney to get the rest of the money. Rodney Smith picked up the money, as well as a hammer located under the store counter, which he shook at the store's employees, telling them not to move. The court held that the evidence supported a conviction of armed robbery for Rodney Smith who wielded the hammer. The court, however, found the evidence insufficient to support a conviction as a principal to armed robbery for the other brother, Haley Smith, reasoning that even though Haley continued with the planned simple robbery after Rodney waved the hammer at the employees, he had not aided, abetted or counseled Rodney to commit an armed robbery.
State v. Smith, is a fact specific case that we do not find compelling. The dissent clearly emphasized that, "Haley not only indirectly counseled and procured Rodney's crime by silently lending his moral support but also directly procured the crime by words of encouragement (to look under the drawer and make sure he got everything)." State v. Smith, 450 So.2d at 717 (Schott, J., dissenting).
In the instant case, while Jones may have failed to explicitly state that a handgun figured into defendant's robbery plans, the jury could have rationally inferred that armed robbery was what defendant had in mind. Additionally, defendant assented to the use of the gun throughout the entire course of the robbery. He created the impression of being forced inside the door at gunpointindeed that was the story he first told the police. Defendant continued the ruse by going down on his knees and praying that he and Ms. Hill would not be shot. Thus, in the unlikely event that defendant did not initially plan for Jones to use a weapon during the robbery, his ratification of its use during the robbery sufficed for a rational trier of fact to find him guilty as a principal.
Further, the remainder of the testimony suffices to support defendant's conviction.
*618 Keith Jones testified that defendant first suggested robbing Only a Buck and that defendant wanted to do so on a Friday night when the store made more money. The robbery in fact occurred on a Friday. Jones testified that he met defendant in the alley just before the robbery, at which time defendant told him to hurry up.
The assistant manager, Laverne Hill, testified that only weeks before the robbery, defendant began parking his car behind the store. It was in this car that Jones sat waiting for defendant to come outside to empty the garbage.
Ms. Hill stated that when the two men entered the store, she assumed that they knew each other because they were so calm. Even after she realized that a robbery was in progress, the events did not "seem real" to her.
The investigating officer followed defendant from the police station to Jones' dormitory room. Jones testified that he and defendant first split the money from the robbery, then tried to hide it when they saw the police officers gathered outside the dormitory.
This testimony, if believed by the jury, was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant was guilty as a principal to the crime of armed robbery.
Defendant argues that at most, the evidence supports a finding that he was an accessory after the fact. Defendant also urges that Jones was not credible. However, as noted above, Jones' testimony, if believed by the jury, was sufficient to support a finding that defendant was guilty as a principal, not merely as an accessory after the fact. The jury's decision of whether to credit Jones' testimony may not be revisited by this court.

Trial Court's Refusal to Instruct Regarding Accessories After the Fact and Inciting a Felony
Defendant argues that the trial court erroneously denied his request that the jury be charged regarding inciting a felony, La. R.S. 14:28, and accessory after the fact, La. R.S. 14:25. However, because no objection appears on the record as required by La. C.Cr.P. art. 801, this issue is not properly before the court. In any event, this assignment of error has no merit.
Neither inciting a felony nor accessory after the fact is a responsive verdict to the charge of armed robbery. See La.C.Cr.P. art. 814(A)(22). Nonetheless, the trial court must charge the jury, in response to an otherwise proper request, as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence. State v. Bullock, 576 So.2d 453 (La.1991); State v. Jackson, 450 So.2d 621 (La.1984); State v. Marse, 365 So.2d 1319 (La.1978).
The jury could not have reasonably inferred that defendant was merely an accessory after the fact. La. R.S. 14:25 provides:
An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction or punishment.
To conclude that defendant was merely an accessory after the fact, the jury would have had to disbelieve that part of the evidence which supported the conclusion that defendant had participated in the planning of the robbery, yet believe that part of the evidence which described defendant's post-robbery culpable acts. The jury could not have reasonably inferred from the evidence that defendant was an accessory after the fact rather than a principal. Thus, defendant was not entitled to an accessory after the fact instruction.
Similarly, the court did not err in refusing to instruct the jury on inciting a felony. La. R.S. 14:28, which provides that inciting a felony is the endeavor by one or more persons to incite or procure another person to commit a felony, is inapplicable here. The only cases falling within the purview of La. R.S. 14:28 are those in which the person solicited has refused the solicitor's request. Where the person solicited actually commits the crime, the solicitor then becomes *619 a party to the crime pursuant to the law of principals. State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). Because Keith Jones actually committed armed robbery, La. R.S. 14:28 is inapplicable and the trial court did not err in failing to give the requested jury instruction.

Speedy Trial Motion
Defendant also complains that his trial did not begin within 120 days of his Speedy Trial Motion. See La.C.Cr.P. art. 701(D)(1)(a).
On October 6, 1995, the Louisiana Supreme Court ordered the trial court to commence trial within 30 days or to release defendant without bail. State v. Hebert, 95-2282 (La.10/06/95), 661 So.2d 465. Defendant's trial commenced on October 23, 1995; therefore, the trial court's compliance with the supreme court's order cured any statutory violation.
Furthermore, the sole remedy for failure to commence trial within the mandated time period is pretrial release without bail. La.C.Cr.P. art. 701(D)(2); State v. Brady, 524 So.2d 1356 (La.App. 1st Cir.1988), writ denied, 532 So.2d 175 (La.1988). Once a defendant has been tried and convicted, his allegation that C.Cr.P. art. 701 has been violated becomes moot. State v. Outley, 629 So.2d 1243 (La.App. 2d Cir.1993), writ denied, 94-0410 (La.05/20/94), 637 So.2d 476; State v. Johnston, 480 So.2d 823 (La.App. 2d Cir.1985).

Excessive Sentence
At trial, defendant orally objected to the ten year sentence, then filed a written motion to reconsider, which the trial court denied. On appeal, defendant argues that the sentence is constitutionally excessive.[1]
A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Baxley, 94-2982 (La.05/22/95), 656 So.2d 973; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Baxley, supra; State v. Lobato, 603 So.2d 739 (La.1992).
Defendant argues that the trial court gave too much weight to his prior conviction for attempted simple robbery. At the sentencing hearing, the trial court explicitly relied upon all of the factors enumerated in La. C.Cr.P. art. 894.1(B) in determining the proper sentence. Defendant's prior conviction was given the appropriate weight, especially considering that the instant armed robbery occurred while defendant was still on probation for the prior conviction.
Defendant argues that the trial court did not adequately consider any mitigating factors, such as his lack of history of drug abuse or school or work disciplinary problems. The pre-sentence investigation report does not state whether defendant, whose college major, ironically, was Criminal Justice, had any disciplinary problems at school. The report does show that in addition to prior convictions for attempted simple robbery (pled down from attempted armed robbery) and theft, defendant was convicted of possession of marijuana and drug paraphernalia. Defendant's conviction on the drug charges and the instant armed robbery charge occurred while he was on probation for the attempted simple robbery charge.
A defendant's sentence must be individualized and tailored to him and the particular offense he committed. State v. Marshall, 94-0461 (La.09/05/95), 660 So.2d 819. A trial court has broad sentencing discretion because it remains in the best position to assess the aggravating and mitigating *620 circumstances presented by each case. State v. Cook, 95-2784 (La.05/31/96), 674 So.2d 957; State v. Smith, 93-0402 (La.07/05/94), 639 So.2d 237 (on rehearing). This court will not set aside a sentence as excessive absent a showing of manifest abuse of the trial court's discretion. State v. Rubalcava, 28,325 (La. App.2d Cir. 05/08/96), 674 So.2d 1035.
The sentence in this case, ten years at hard labor, is not grossly out of proportion to the severity of the crime of armed robbery, nor is it a purposeless imposition of pain and suffering.[2] The sentence further appears to be well-tailored to the circumstances of this case. This assignment is meritless.
The record reveals no error patent.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Defendant also asserts as error the trial court's failure to apply the Felony Sentencing Guidelines. Defendant, however, was sentenced after the legislature amended La.C.Cr.P. art. 894.1 to omit reference to the sentencing guidelines. See Acts 1995, No. 942, § 1. Because art. 894.1 is procedural in nature, the law in effect when defendant was sentenced, not at the time of the offense, is applicable. See State v. Collins, 95-1503 (La.App. 3d Cir. 05/08/96), 677 So.2d 500. This argument has no merit.
[2] Defendant's sentence falls well within the range of sentences approved by this court in similar cases. See State v. Jefferson, 606 So.2d 869 (La.App.2d Cir.1992) (approving a 16-year sentence for a first offender); State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992) (approving a 25-year sentence for a defendant with a prior criminal history); State v. Brown, 588 So.2d 1317 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1298 (La.1992) (approving a 10-year sentence for a defendant with extensive juvenile record and no adult convictions); State v. Thomas, 468 So.2d 592 (La.App. 2d Cir.1985), writ denied, 474 So.2d 1303 (La.1985) (approving a 25-year sentence for a young offender with previous misdemeanor convictions).