768 So.2d 687 (2000)
STATE of Louisiana, Appellee,
v.
Rodney G. HUNTER, Appellant.
No. 33,066-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
*689 Louisiana Appellate Project by J. Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Don Burkett, District Attorney, H. Melissa Sugar, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, C.J., and STEWART and KOSTELKA, JJ.
KOSTELKA, J.
After a jury convicted Rodney G. Hunter ("Hunter") of distribution of cocaine, La. R.S. 40:967(A), he was charged and adjudicated as an habitual offender. The trial court sentenced Hunter as a second felony offender to the mandatory minimum sentence of fifteen years at hard labor, without benefit of parole, probation or suspension of sentence. Hunter appeals his conviction and sentence. We affirm, with instructions.

FACTS
During the evening hours of September 4, 1997, Caddo Parish Sheriff's Deputies Rick Farris ("Farris") and April Wright ("Wright") were working for the Louisiana State Narcotic Violent Crime Task Force assigned to undercover operations in Mansfield, Louisiana. Farris and Wright worked under the direction of the DeSoto Parish Sheriff's Department and were teamed with a confidential informant ("CI") who directed them to the known drug areas in Mansfield. The vehicle used in the operation was equipped with a video surveillance camera and an electronic listening device. On the night in question, Farris drove and the CI was in the front passenger seat, while Wright was in the back passenger side seat.
While on North Park Street in a residential area of Mansfield, the CI saw Hunter and stated that he was likely to have "something." Farris stopped the vehicle and the occupants of the vehicle called Hunter over to talk to them. Hunter came to the window of the vehicle and Wright asked him what he had; Hunter responded that he had "anything" they wanted. Hunter entered the front passenger *690 seat of the vehicle. Unbeknownst to Hunter, Farris requested that he get into the car so that he could be more clearly seen by the video camera which filmed the entire episode. Wright told Hunter that she would take two 10s or a 20 (referring to the dollar amount of the cocaine), and, as he handed her the drugs over the front seat, she handed him the money. Hunter then indicated that he desired to smoke some of the crack himself but the deputies told him that they had to leave. The CI got back into the car and they drove off.
The CI identified the seller as Glen Hunter. Shortly after leaving the scene, the deputies were informed by Lt. Robert Davidson ("Davidson") of the DeSoto Parish Sheriff's Department that the defendant's full name was Rodney Glen Hunter. Approximately five days after the drug transaction, Farris and Wright identified Harris as the perpetrator from prior arrest photos. Crime lab tests confirmed that the substance sold to the officers was cocaine.
Hunter was arrested and charged by bill of information. On April 21, 1999, after trial and conviction, Hunter was sentenced to seven years at hard labor. The sentence was ordered to run consecutively to a three-year sentence Hunter was ordered to serve following the revocation of his probation on a previous conviction of simple possession of cocaine. Hunter was on probation for that offense when he committed the present offense. On July 9, 1998, the district attorney filed an habitual offender bill of information. After a hearing on July 19, 1999, the trial court adjudicated Hunter a second felony offender, vacated the prior sentence of seven years, and imposed the mandatory minimum sentence of fifteen years at hard labor without benefit of parole, probation or suspension of sentence.[1]
Following the imposition of the first sentence, Hunter timely filed a motion to reconsider sentence which was denied by the trial court. Hunter also filed motions for new trial and post-verdict judgment of acquittal. When the trial court denied both motions, this appeal ensued.

DISCUSSION

Sufficiency of the Evidence

Identification
In assignments of error numbers one, five and six, Hunter argues that based upon the poor quality of the video, due to dark lighting conditions and the identification of Hunter by the officers through a single photograph, the evidence was insufficient at trial to support his identification as the perpetrator of this crime beyond a reasonable doubt. In addition, Hunter claims that the trial court erred in failing to grant his motion for new trial based upon his "mug shot" photo being shown to the jury.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude *691 beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
When the defendant claims that he is not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.02/21/97), 688 So.2d 520.
La. R.S. 40:967 A(1) provides that it is unlawful for any person to knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II. La. R.S. 40:964 A(4) lists cocaine as a Schedule II substance of vegetable origin or chemical synthesis.
At trial, Wright and Farris testified to their identification of Hunter as the perpetrator of the crime from a prior arrest photograph which was introduced into evidence. Wright, Farris and Davidson also made in-court identifications of Hunter as the individual who sold the drugs during this undercover transaction. Hunter attacks the "single photo" identifications of him by Wright and Farris as "highly suspect." It is unclear whether Hunter now seeks to contest the suggestiveness of Wright's and Farris's out-of-court identifications. Nevertheless, because the record shows that no contemporaneous objection was made nor motion to suppress filed regarding the suggestiveness of the out-of-court identification, Hunter has waived review of this issue on appeal. State v. Wright, 410 So.2d 1092 (La.1982); State v. Brown, 588 So.2d 1317 (La.App. 2d Cir. 1991), writ denied, 592 So.2d 1298 (La. 1992).
Clearly, both the in- and out-of-court identifications by the three officers, if believed by the jury, were sufficient to negate any reasonable probability of misidentification regardless of any argument concerning the poor quality of the video recording. Obviously, the jury accepted the testimony of these witnesses as credible evidence. Of course, it is the function of the jury, and not that of the appellate court, to assess the credibility of witnesses. State v. McKinney, 31,611 (La.App.2d Cir.02/24/99), 728 So.2d 1009. When viewed in the light most favorable to the state, this identification evidence is sufficient proof of Hunter's guilt of distribution of cocaine beyond a reasonable doubt. We find no merit to this argument.

New Trial
As part of his argument contesting the sufficiency of the evidence, Hunter argues that the trial court allowed the jury to consider other crimes evidence. He appears to argue that the photograph from which the officers first identified Hunter as the perpetrator of the crime, and which was introduced into evidence, constituted evidence of a prior arrest or conviction.
The record shows that during Farris's testimony, the state sought to introduce into evidence two photographs from which Farris and Wright had identified Hunter. The defense objected to the introduction of the photographs because they were booking photographs from previous arrests. The court ordered that the photographs be edited so as to remove any evidence of arrest information prior to showing those to the jury. Because during editing, one of the photographs was misplaced, the state introduced only one photograph of Hunter into evidence, S-3, without further objection from the defense.[2]
Hunter filed a motion for new trial on September 17, 1998. In that motion, he *692 argued only his entitlement to a new trial based upon the jury's consideration of prejudicial other crimes evidence prior to the editing of the photographs. The trial court denied this claim, noting that it had sustained his objection regarding the editing of the pictures and that the state had been instructed not to allow the jury to view the evidence until it had been redacted. When the court nevertheless allowed the record to remain open for the filing of briefs on the issue, defense counsel noted that the "real concern" about the photograph was his belief that the jury saw the photo "before those alterations were made."[3] The court denied the granting of a new trial on that issue due to lack of proof-namely, that Hunter had not "[P]roduced one of the jurors that said that influenced their deliberations...."
The record shows that Hunter failed to object to the introduction of the edited photograph; Hunter's motion for new trial complained that prior to editing the jury saw the photographs which contained other crimes evidence. Because no objection was made on the grounds that the edited photographs contained other crimes evidence, either at trial, or in the motion for new trial, Hunter is precluded from now raising this specific ground on appeal. La. C.Cr.P. art. 841; State v. Johnson, 32,910 (La.App.2d Cir.01/26/00), 750 So.2d 398.
Hunter now also attempts to raise the issue of the propriety of juror notes relating to the photograph and their effect on his conviction.
The court minutes reflect that after beginning its deliberations, the jury sent a written note to the court requesting to see the photograph. Without discussion, the court allowed the jury to view S-3.[4] The written note was filed into the record prior to the jury verdict. Thereafter, the jury sent a "written note by the Bailiff to the Court." This note was also filed into the record. The substance of the note written by the jury foreman was the question of whether the officers identified the photo out of an "unnamed mug book." The record reflects no response by the trial court to the question. Thereafter, the jury rendered the guilty verdict.
Specifically, Hunter claims that the jury notes suggest that the jury "came to suspect [Hunter] had a previous arrest or conviction." He requests that this court supplement the record or remand for a hearing regarding the court's response to the notes because he alleges that this court "lacks sufficient information to address the validity of Appellant's conviction."
As we have previously discussed, although Hunter objected to the jury's consideration of the photographs on other grounds, he nowhere raised this specific ground by objection or in his motion for new trial.[5] He, accordingly, is precluded from now raising this issue on appeal. La. C.Cr.P. art. 841; State v. Johnson, supra.
Moreover, we can discern no prejudicial error in the jury's actions. Obviously, the form of the request shows that the jury had reached no conclusion on the matter, i.e., the question was whether the officers had identified Hunter from a mug shot. From the record before us, it appears that the jury's inquiry resulted from their common-sense experience or curiosity. We view this scenario as a step removed from the situation involving a police officer's unsolicited and gratuitous reference to other crimes evidence which does not prejudice the defendant unless it can *693 be shown that the state designed the response to place inadmissible other crimes evidence before the jury. See State v. Lepkowski, 316 So.2d 727 (La.1975). We have been shown no evidence which shows that the state played any part in the jury's actions. Rather, the record shows that the defendant agreed to the introduction of the evidence without objection. Moreover, the court's lack of a response to the inquiry eliminated any potential prejudice to Hunter. Accordingly, we find no merit to this claim and decline to remand for an evidentiary hearing on this issue.

Excessive Sentence
In assignments of error numbers two, three and four, Hunter complains that his sentence is excessive and that the trial court failed to comply with La.C.Cr.P. art. 894.1. Specifically, Hunter argues that this court must consider whether the statutorily mandated minimum sentence must yield to the constitutional prohibition against excessive punishment.
While Hunter timely filed a motion to reconsider his April 21, 1999 seven-year sentence, he failed to file a motion to reconsider his habitual offender sentence. La.C.Cr.P. art. 881.1 provides that the failure to file a motion to reconsider or to include a specific ground upon which the motion may be based precludes the defendant, on appeal, from raising an objection to his sentence on any grounds not raised before the trial court. This court has held that under these circumstances, Hunter's sentencing claim is limited to constitutional excessiveness. State v. Branch, 30,733 (La.App.2d Cir.07/06/98), 714 So.2d 1277, writ denied, 98-2359 (La.01/08/99), 734 So.2d 1227.
As a second felony offender, Hunter was sentenced under La. R.S. 15:529.1A(1)(a) which states:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Because a violation of La. R.S. 40:967A(1), distribution of cocaine, carries a sentence of not less than five years nor more than thirty years at hard labor, the statutorily mandated sentencing range for Hunter's conviction is a minimum of fifteen years and a maximum of sixty years. The trial court sentenced defendant to the mandatory minimum sentence of fifteen years at hard labor.
The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Norris, 32,941 (La.App.2d Cir.03/01/00), 754 So.2d 362. Pursuant to this function, the legislature enacted the habitual offender statute which has been held, on numerous occasions, to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed constitutional. Id.
Although a punishment required by statute may constitute excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. State v. Dorthey, 623 So.2d 1276 (La.1993).
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show he is exceptional, which in this context means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Norris, supra. Additionally, in determining whether Hunter has met his burden, *694 the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
After close scrutiny of the record before us, we cannot find that Hunter is the "exceptional" defendant for whom downward departure from the mandatory statutory provision is required. Hunter was on probation for a cocaine conviction when he committed the present offense. Obviously, previous leniency failed to deter Hunter from further criminal activity of the same nature. This minimum sentence fails to shock the sense of justice and is meaningfully tailored to this offender. Accordingly, the sentence is not constitutionally excessive.

Habitual Offender Adjudication
In his final assigned error, Hunter claims that the evidence was insufficient to adjudicate him as an habitual offender because the court failed to inform him of his right to remain silent and rights of confrontation and cross-examination at his June 3, 1996 guilty plea. This conviction was used as the predicate offense for Hunter's second felony habitual offender adjudication.
We note that La. R.S. 15:529.1D(1)(b) provides that a defendant must file a written response to the habitual offender bill of information in order to assert a claim that any conviction or adjudication of delinquency is invalid. Moreover, those provisions provide in pertinent part that a copy of the response shall be served upon the prosecutor and that:
A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information.... Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. [Emphasis ours]
In this case, Hunter not only failed to file a written response to the habitual offender bill of information, but he also did not object on a constitutional basis to the use of his June 3, 1996 conviction as a predicate offense during either of the two habitual offender hearings.[6] Accordingly, Hunter is not entitled to raise that complaint for purposes of appellate review. La. R.S. 15:529D(1)(b); La.C.Cr.P. art. 841; State v. Windham, 630 So.2d 688 (La.1993); State v. Jackson, 31,433 (La. App.2d Cir.01/20/99), 726 So.2d 1061, writ denied, 99-2250 (La.12/17/99), 751 So.2d 876.
Moreover, a review of the certified copies of the minute entries for Hunter's June 3, 1996 guilty plea shows that he was not only represented by counsel but was also informed of, and waived his right to, the assistance of counsel, the rights to confront and cross-examine witnesses against him, and his right not to be compelled to incriminate himself.

Errors Patent
We note that the trial court imposed Hunter's entire fifteen-year sentence without benefit of parole, probation or suspension of sentence. However, La. R.S. 15:529.1(G) does not place any restrictions on parole eligibility. State v. Tate, 99-1483 (La.11/24/99), 747 So.2d 519. Nevertheless, additional restrictions may be imposed on the sentence provided those additional restrictions are provided in the underlying offense of conviction. State v. Shields, 614 So.2d 1279 (La.App. 2d Cir. 1993), writ denied, 620 So.2d 874 (La. *695 1993); State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989); State v. Demouchet, 595 So.2d 389 (La.App. 3d Cir.1992). La. R.S. 40:967A(1) provides that the first five years of any sentence imposed under the statute be served without benefit of parole, probation or suspension of sentence. Thus, after adjudicating Hunter an habitual offender, the trial court was required to impose only five years of the fifteen-year sentence without benefit of parole. Tate, supra; See also State v. Martinez, 560 So.2d 608 (La.App. 4th Cir. 1990); State v. Williams, 464 So.2d 451 (La.App. 1st Cir.1985). The district court erred in imposing the entire fifteen-year term without benefit of parole. Accordingly, the sentence of the trial court is vacated only to the extent that it eliminates from Hunter's sentence the conditions required by law, and we amend the sentence to provide that Hunter serve fifteen years at hard labor without benefit of parole eligibility for the first five years. Tate, supra. The district court is directed to make a minute entry reflecting this change and to send a certified copy of the new minutes to Hunter and to the relevant prison authorities, who otherwise lack discretion to make the amendments themselves in the documents they receive from the sentencing court pursuant to La. C.Cr.P. art. 892. State v. Harris, 93-1098 (La.01/05/96), 665 So.2d 1164.
We also note that the trial court incorrectly advised Hunter of the prescriptive period for filing post-conviction relief in accordance with the newly amended provisions of La.C.Cr. P. art. 930.8 (Acts 1999, Regular Sess., No. 1262). Accordingly, the district court is hereby directed to send appropriate notice of the delays to Hunter within thirty days of the rendition of this opinion, and then file, in the record, proof that Hunter received such notice. State v. Morvan, 31,511 (La.App.2d Cir.12/09/98), 725 So.2d 515, writ denied, 99-0186 (La.05/28/99), 743 So.2d 659.

CONCLUSION
For the foregoing reasons, Hunter's conviction is affirmed. His sentence is amended in accordance with this opinion. The trial court is directed to send appropriate written notice to Hunter of the time delays for filing post-conviction relief and is directed to make a minute entry correcting the illegal imposition of the entire sentence without benefit of parole in accordance with this opinion.
AFFIRMED WITH INSTRUCTIONS.
NOTES
[1] An originally scheduled, but premature, June 24, 1999 habitual offender hearing was continued and proofs were resubmitted by the state at the July 19, 1999 hearing.
[2] Although Hunter argued that he believed the jury saw the unedited photos, the record shows that the trial court noted on the record that the photo of Hunter had been redacted before it was shown to the jury.
[3] The record before us does not reflect that any additional briefs were filed.
[4] We have contacted the DeSoto Parish Clerk of Court's office which stated that no further transcript of these jury actions exists because there was no discussion accompanying either jury request.
[5] We also note that contrary to Hunter's brief, S-2, introduced at the hearing on the motion for new trial, was a document written by Hunter and not the juror's notes.
[6] The record shows that Hunter objected only to the introduction of S-2, a certified copy of the court minutes reflecting the June 3, 1996 guilty plea, on the basis of a lack of foundation. The court denied the objection, finding the document to be self-proving.