855 So.2d 831 (2003)
STATE of Louisiana, Appellee,
v.
Jearl Ramsey PLUNKETT, Appellant.
No. 37,306-KA.
Court of Appeals of Louisiana, Second Circuit.
September 12, 2003.
*832 Louisiana Appellate Project, by Carey J. Ellis, III, Indigent Defender Board, for Appellant.
Schuyler Marvin, District Attorney, Jason Trevor Brown, Andrew C. Jacobs, C. Sherburne Sentell, III, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Jearl Ramsey Plunkett, was convicted by a jury of the aggravated rape of T.W., a minor child under the age of 12 years, and was sentenced to serve the mandatory term of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. In this appeal, Defendant argues that the evidence produced at trial was insufficient to support his conviction. For the reasons stated herein, we affirm.

FACTS
The record shows that, on September 18, 1999, four-year-old T.W. spent the night with Defendant, who was a close friend of the family. Apparently, Defendant often baby-sat T.W. when her mother worked or went out. T.W. slept in the same bed with Defendant on the night of September 18. The minor victim later told her mother and a friend of her mother that Defendant played a game with her in which he tied something over her eyes, which she believed was white, and put an object into her vagina. T.W. was taken to the local hospital to be examined and, subsequently, to the coroner's office where a rape examination was performed. The rape examination revealed evidence of vaginal penetration. T.W.'s vagina was reddened and abraded. The hymen was abraded and blood was evident.
On October 18, 1999, Defendant was charged by bill of information with molestation of a juvenile. On December 10, 1999, following a grand jury indictment, the charge was amended to aggravated rape of a person under the age of 12 years.
A search of Defendant's home revealed a white rag in his bedroom, similar to the one described by the victim. A pair of T.W.'s soiled panties were recovered from her mother. The record indicates that these panties became soiled from Defendant's semen that leaked from the young victim. The panties were examined by Northwest Louisiana Crime Lab and found to contain sperm that was matched to Defendant. Although Defendant attempted to provide an explanation during trial that he used the panties to wipe himself after he masturbated, this testimony was rebutted by T.W.'s mother. She testified that she changed T.W.'s panties that she wore to Defendant's home because they were bloodied. She stated that the second pair of panties, worn by the victim the day after the rape and given to detectives by the mother, had come from a stack of recently cleaned laundry in her house and Defendant could not have had access to this particular pair of panties.
After a jury trial, Defendant was found guilty as charged by 11 members of the jury on September 12, 2002. On November 18, 2002, Defendant was sentenced to mandatory life in prison without the benefit of parole, probation or suspension of sentence.

DISCUSSION
The only issue on appeal is the sufficiency of the evidence at trial to support *833 Defendant's conviction of the aggravated rape of four-year-old T.W. The question of sufficiency of evidence is an issue properly raised in the trial court by a motion for post-verdict judgment of acquittal under La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). Although the record does not reflect that Defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255.
In the case sub judice, Defendant was indicted by a grand jury on the charge of aggravated rape of T.W., a four-year-old female, in violation of La. R.S. 14:42 A(4), which defines aggravated rape as:
a. A rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under anyone or more of the following circumstances:

*834 * * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
La. R.S. 14:41 defines rape as:
A. The act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
During a four-day jury trial, the State presented the testimonies of the victim, T.W. (via videotape), her mother, a friend of the victim's mother, the investigating detective, the Deputy Coroner who examined T.W. and a forensic scientist.
Deputy Coroner Jo Ann Cook, a certified nurse practitioner, performed the rape examination on T.W. and testified as an expert in rape examinations and sexual assault. Deputy Coroner Cook testified that there was physical evidence of rape and forced trauma on the victim's vagina and hymen. This evidence was indicative or could be associated with the penetration of a male's penis. She further testified that there was a lot of redness around the victim's vaginal vulva area. In Deputy Coroner Cook's expert opinion, the majority of the injuries were internal, mainly of the hymen. She testified that four-year-old T.W.'s hymen was "bruised and very, very red and abraded."
Detective Angela Cropper with the Webster Parish Sheriff's Department investigated the alleged rape. Detective Cropper testified that a white cloth, similar to the one described by T.W., was found during a search of Defendant's residence. Detective Cropper further testified that she was given a pair of soiled panties worn by the victim the day after the rape occurred and that she submitted the panties to the Northwest Louisiana Crime Lab in Shreveport for testing.
Michelle Gaines, a forensic scientist, testified as an expert in DNA analysis. Ms. Gaines analyzed the panties sent from Detective Cropper and testified that the soiled matter in the crotch of the victim's panties was semen and that the soiled matter was 186 billion times more likely to be a mixture of DNA from the victim, T.W., and Defendant, than a mixture of DNA from T.W. and some other unknown individual. Regarding the soiled panties recovered by Detective Cropper, Deputy Coroner Cook explained that, if penile penetration and ejaculation had occurred in the victim, the stains in the victim's panties would be consistent with seminal leakage. She confirmed that, if there had been ejaculation inside of T.W., the location of the stain would be where the seminal fluid would leak out. She also explained that, due to T.W.'s young age, the female hormone estrogen is not present; and, therefore, it would take hours for any seminal leakage to occur.
T.W.'s mother and her mother's close friend testified, each describing how the rape was discovered and reported. Both women testified that T.W. came to them and informed them that Defendant had played a game with her and he put something over her eyes. The mother's friend testified that T.W. said that the game hurt and she pointed to her vaginal and lower abdominal regions.
T.W.'s mother testified that after she brought T.W. home on September 19, she noticed that T.W.'s panties were dirty and thought that T.W. had "messed on herself." She attempted to give T.W. a bath, but T.W. would not let her mother take her clothes off. The mother then testified that she changed T.W.'s panties and she *835 saw blood in the panties. She stated that she washed this first pair of panties that T.W. had on when she came back from Defendant's house and that the soiled panties she gave Detective Cropper were the panties that she had put on the victim after removing the bloodstained panties. She also stated that no one else had access to her laundry.
Janice Reliford, the forensic interviewer at the Gingerbread House[1], interviewed T.W. at the request of Detective Cropper. Ms. Reliford found T.W. to be credible and further found her account to be consistent throughout the interview as far as the events that took place with Defendant. Ms. Reliford testified that T.W. said that men had "sticks" and women had "boobs and butts." In her opinion, the victim knew the female and male sexual organs, but referred to them in this manner. She also testified that she asked T.W. if Defendant put his "stick" in her "butt" or where he put it, and T.W. pointed to the female doll's buttocks as well as general vaginal area.
Defendant testified on his behalf and attempted to explain how his semen was found in the crotch of T.W.'s panties. He stated that, after masturbating in his room, his grandmother knocked on his door and he used a pair of T.W.'s panties to wipe himself off. Defendant later stated that, on the night in question, T.W. only took her shirt off and put on a t-shirt that he had for her to sleep in. He stated that T.W. put on the soiled panties Sunday morning, prior to going home. Contradictory testimony was elicited from T.W.'s mother's friend, however, who testified that she had never seen, on the night in question or any other previous occasion, any of T.W.'s clothes given to Defendant when he was to babysit her. She testified that T.W. would go and return home in the same clothes she was wearing when she left.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, supra. This record contains sufficient evidence to support Defendant's conviction of aggravated rape. Defendant's assignment of error is without merit.

CONCLUSION
For the foregoing reasons, Defendant's, Jearl Ramsey Plunkett, conviction is affirmed.
AFFIRMED.
NOTES
[1] The Gingerbread House is the Children's Advocacy Center in Shreveport where children who are suspected victims of sexual abuse are taken by police officers or Office of Community Services personnel. It provides a child-friendly environment in which the children are interviewed in reference to alleged abuse.