STEWART, J.
| following a jury trial, the defendant, Shawn Lewis, was convicted of illegal possession of stolen things. After being adjudicated a fifth-felony habitual offender, the defendant was sentenced .to 25 years at hard labor, without the benefit of probation or suspension of sentence. The defendant now appeals. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On August 12, 2011, the defendant was charged by bill of information with a violation of “La. R.S. 14:67 AB1,” specifically, the theft of a Kawasaki ATV (“the Kawasaki”) valued at $1,500 or more that occurred prior to June 12, 2010. The state twice amended the bill of information, and at the time of trial, the defendant was charged with theft valued at $500 or greater, or in the alternative, illegal possession of stolen things valued at $500 or greater.
The first witness was Lewis Russell (“Russell”), the former chief criminal in *985 vestigator for the West Carroll Parish Sheriffs Office. Russell testified that he learned of the theft of the Kawasaki while investigating the defendant’s cousin, Tommy Lewis (“Tommy”), in connection with a burglary. Tommy informed Russell that the defendant had stolen a four-wheeler from Freddie Payne (“Payne”) on or about June 12, 2010, and traded the stolen four-wheeler for another four-wheeler belonging to Mark Lewis (“Mark”), Tommy’s brother who lives in Mississippi. Russell spoke with Mark on the phone and confirmed that he had in fact traded his Yamaha four-wheeler (“the Yamaha”) for a “newer and bigger one,” 12namely, the Kawasaki, with the defendant. Mark apparently was not aware that the Kawasaki he received in the trade was stolen. Mark provided the serial number, make, and model of the four-wheeler in his possession. The serial number matched that of Payne’s stolen Kawasaki.
Russell recovered the Kawasaki from Mark’s home in Mississippi and took a statement from Mark about how he had come to possess it. Mark’s statement matched what Tommy had told Russell about the trade made by the defendant. Russell then obtained a warrant and arrested the defendant. The Yamaha was recovered from the woods behind the house where the defendant’s father, Billy Lewis (“Billy”), resided.
In the course of Russell’s testimony, the state introduced the offense report filed by Payne on June 12, 2010, concerning the stolen Kawasaki. The state also introduced the sales receipts for the purchases of the Yamaha by Melissa Greene (“Greene”), Mark’s wife, from Village Cycle Center, Inc., in Starkville, Mississippi, on December 20, 1996, and the Kawasaki by Payne from Delta Ridge Implement, Inc., in Delhi, Louisiana, in 2001.
After Russell’s testimony, the state called Tommy, who confirmed that he provided the police with information regarding a stolen Kawasaki at the time of his own arrest for theft charges.[1] Tommy testified that he and the defendant saw the Kawasaki parked on the side of a field while they were driving around looking for hay. Around the end of that same week, the defendant told Tommy that he had gone back and gotten the Kawasaki |afrom the field. While talking -with his brother, Mark, on the telephone, Tommy learned he was interested in getting a bigger four-wheeler. Tommy’s communications with Mark and the defendant led to them arranging to trade four-wheelers. To make the trade, the defendant followed Tommy to meet Mark. Tommy, accompanied by his girlfriend, Laree Hart (“Laree”), and his children, was meeting Mark at a halfway point between their homes to drop off the children for a visit in Mississippi. The defendant followed in his truck behind Tommy’s vehicle. Tommy testified that the defendant transported the Kawasaki in a horse trailer, but stopped in Eudora, Arkansas, to unload the Kawasaki from the horse trailer and put it in the back of his truck. Tommy testified that these events related by him happened within about a week’s time. Though Tommy knew the Kawasaki was stolen, he did not tell Mark. Tommy also testified ■ that he told the police that the Yamaha could be found either at the residence of the defendant or the defendant’s father.
Laree testified that she and Tommy had been at the defendant’s house riding four- *986 wheelers on the day of the trade between the defendant and Mark. She recalled seeing a four-wheeler loaded in a horse trailer attached to the defendant’s truck. She testified that she accompanied Tommy to bring his children to Mark and that the defendant followed them. She also recalled that the defendant stopped along the way to unload the four-wheeler from the horse trailer and load it on the bed of his truck. Laree did not know anything about the trade between the defendant and Mark and denied knowing the Kawasaki was stolen. She admitted that she was on |4feIony probation for burglary and conspiracy to manufacture methamphetamine and that she committed both offenses with Tommy.
Mark testified that he traded four-wheelers with the defendant in June 2010. He told his brother, Tommy, that he was looking for a bigger four-wheeler and learned from Tommy that the defendant “had plenty of four wheelers.” Soon after, the defendant called him about trading their four-wheelers. Mark and the defendant agreed to meet at a halfway point between their homes. Mark testified that he was accompanied by his nephew and son and that the defendant had a woman and some children with him. Mark also testified that Tommy and Laree brought Tommy’s children to meet him for a visit. Mark traded the Yamaha that was given to him by Greene. He confirmed that he traded with the defendant, not with Tommy. He denied covering for Tommy.
Assistant Police Chief Charles Irby, of the Oak Grove Police Department, testified about a burglary and theft of tools that occurred at Mike’s Automotive on February 12, 2013. Irby said that a confidential informant reported that tools taken from Mike’s Automotive had been seen in the defendant’s toolbox. The missing tools were found in the defendant’s toolbox at his then place of employment and positively identified by serial number. The defendant was subsequently charged with simple burglary in West Carroll Parish where that offense occurred and with illegal possession of stolen things in Richland Parish where the tools were recovered.
As its final witness, the state called Gloria Wright (“Wright”), a supervisor of probation and parole with the Department of Corrections. |sWright was the defendant’s parole and probation officer for two years, from 2008 to 2010, for two charges: illegal possession of stolen things, namely, a four-wheeler, and alteration of a motor vehicle VIN on that stolen four-wheeler. She had no problems during her supervision of the defendant. When the state asked whether she had a copy of his rap sheet, and whether she recalled his other offenses, Wright answered that “there were numerous convictions on his parole certificate.”
At the close of the state’s case, the parties stipulated that the value of the Kawasaki was in excess of $500.
The defendant’s father, Billy, testified for the defense. Billy testified that he traded a 1968 Chevrolet truck with Tommy for the Yamaha that was found on his property and that the defendant never possessed the Yamaha. Although he told investigators that the trade had occurred three or four years earlier, he testified that it actually occurred about one year to eight months before the Yamaha was seized from this property. Though he claimed to have traded a truck for the Yamaha, Billy admitted that he had not signed the truck title over to Tommy. He claimed this was because he still had some repairs to make on it. He also did not get the title to the Yamaha from Tommy. .
The defendant testified on his own behalf. He denied taking the Kawasaki and trading four-wheelers with Mark. He claimed that the last time he saw Mark *987 was when he was 18 years old, about 20 years ago. When questioned by the state, the defendant admitted to a number of prior offenses.
| fiFoIlowing closing arguments, the jury found the defendant guilty of illegal possession of stolen things, valued at more than $500. The state then announced that it would file an habitual offender bill against the defendant. After a hearing on April 2, 2014, the defendant was adjudicated a fifth-felony offender. He was sentenced that same date to 25 years at hard labor without benefit of probation or suspension of sentence as a fifth-felony habitual offender. The defendant now appeals his conviction and sentence.
DISCUSSION

Sufficiency of the Evidence

In the first assignment of error, the defendant contends that the evidence adduced at trial was not sufficient to convict him of illegal possession of stolen things. The defendant argues that the state failed to prove beyond a reasonable doubt that he intentionally possessed,' procured, received, or concealed the Kawasaki under circumstances that indicated he knew or had good reason to believe it was the subject of a theft as is required under La. R.S. 14:69(A).
The defendant argues that there were inconsistencies in Mark’s and Tommy’s versions of the four-wheeler trade. Specifically, he asserts that the timing of the conversation between Mark and Tommy about a possible four-wheeler trade involving him does not make sense with the timing of the actual theft. The defendant points out that Mark testified that he spoke with Tommy during Easter, which fell on April 4, 2010, about two months before Payne’s Kawasaki was stolen, and that “the next thing he knew,” the defendant called with information about a four-wheeler. The defense claims 17Mark’s version is not consistent with the time when Payne’s Kawasaki was stolen. The defense also claims that Tommy’s version cannot be correct, because the defendant did not even acquire a four-wheeler as a result of the theft. The defense notes that Mark’s Yamaha was found at Billy’s residence and that Billy claimed he received it from Tommy.
In response, the state argues that it met its burden of proof. The testimony of the investigating officer and several civilian witnesses, together with corroborating documentary evidence, established all of the elements of the crime. Therefore, the state contends that the evidence was sufficient to convict the defendant of illegal possession of stolen things.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A previewing court accords great deference to a jury’s decision to accept or *988 reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (Lia.App.2d Cir.2/13/08), 975 So.2d 753.
Intentional possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses. La. R.S. 14:69(A).
Though there was conflicting testimony among the witnesses at trial, the jury’s verdict indicates that it found the testimony of Tommy and Mark to be credible. This court cannot assess the credibility of witnesses or re-weigh the evidence. As such, we must accord great deference to the jury’s ^decision to accept the testimony of Tommy and Mark, over that of the defendant and his father.
Tommy’s testimony established that the Kawasaki was stolen from Payne. This was corroborated by the serial number obtained from Mark and photographs of the Kawasaki taken by the police and identified by Payne at trial. Tommy’s testimony also established that the defendant had possession of the stolen Kawasaki. Tommy testified that the defendant told him he went back for the Kawasaki after they saw it while driving around, and he testified that later that week he saw the Kawasaki at the defendant’s residence, where it was in a horse trailer attached to the defendant’s truck. Tommy testified that the defendant followed him to meet with Mark and that he later saw Mark’s Yamaha at the defendant’s house. Tommy’s testimony sufficiently established that the defendant had possession of the stolen Kawasaki.
Our review of Mark’s testimony shows that it was consistent with that of Tommy on the relevant facts needed to establish the elements of the offense of conviction. Mark testified that he acquired the Kawasaki from the defendant in a trade in June 2010. We are not persuaded by the defendant’s argument that Mark’s testimony that he spoke with Tommy at Easter about getting a new four-wheeler does not make sense with the timing of the theft on June 12, 2010. Mark’s testimony that “the next thing I know he’s calling me” is not definitive as to time and does not exclude the possibility that Mark actually spoke with the defendant two months later in | inJune around the time of the theft of Payne’s Kawasaki and the subsequent trade.
We find that the totality of the testimony and other evidence, including the stipulation as to the value of the Kawasaki, was sufficient to establish the elements of illegal possession of stolen things of a value over $500. Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have reasonably concluded that the defendant did in fact knowingly possess, procure, receive, or conceal the stolen Kawasaki four-wheel *989 er in question. Therefore, this assignment of error is without merit.

Excessiveness of the Sentence

In his second assignment of error, the defendant contends that the sentence imposed was unconstitutionally harsh and excessive given the facts and circumstances of the case. Regarding his criminal record, the defendant specifically notes that ten of his 18 prior felonies were committed on the same day in 1996.
The state argues that the trial court considered all of the criteria set forth in La. C. Cr. P. art. 894.1 and that the record clearly shows an adequate factual basis for the sentence imposed.
La. R.S. 14:69(B)(2) provides:
When the value of the stolen things is five hundred dollars or more, but less than one thousand five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both.
Regarding habitual offender adjudication, La. R.S. 15:529.1 provides, in pertinent part:
| tlIf the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.
La. R.S. 15:529.1(A)(4)(a).
Louisiana Revised Statute 15:529.1(G) provides that any sentence imposed under the Habitual Offender Law is to be served at hard labor without the benefit of probation or suspension of sentence.
A trial court has broad discretion to sentence within the statutory limits. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641; State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, supra.
The defendant did not file a motion to reconsider sentence. Under La. C. Cr. P. art. 881.1, the failure to make a motion for reconsideration of sentence within 30 days following the imposition of the sentence or within such longer period as the trial court may set, precludes a defendant from raising an objection to the sentence on appeal.
The defendant’s failure to timely file a motion to reconsider sentence limits our review to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Morgan, 44,461 (La.App. 2 Cir. 8/19/09), 16 So.3d 1289. Under that standard, we must determine whether the sentence is illegal, grossly disproportionate to the severity of the offense so as to be shocking to the sense of justice, or | ^nothing more than a needless infliction of pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App.2d Cir.4/6/05), 899 So.2d 733.
At the sentencing hearing on April 2, 2014, the trial court considered the facts of the case, the PSI report, a petition and numerous letters submitted on behalf of the defendant, the sentencing guidelines set forth in La. C. Cr. P. art. 894.1, and the habitual offender law. Though the trial court had adjudicated the defendant a fifth-felony offender, it noted that he had actually been convicted of 18 separate felonies, mostly thefts and burglaries. As mitigating factors, the court considered the defendant’s age, that he is married with *990 four minor children, and that his imprisonment would result in hardship on his dependents. The court observed that most of the prior felonies were from 2000 and earlier, and that none involved violent offenses or crimes against the person. The court also recognized that the defendant had been employed most of his adult life, although the record indicates that he had not remained with any one job for a significant time.
As aggravating factors, the court noted the defendant’s “unbelievable” criminal record. The defendant had two additional felony charges pending in Richland and West Carroll Parishes. In considering the defendant’s prior imprisonment, the court noted that he had been given numerous opportunities to change his life. The court also noted the similarities of his offenses, mostly burglaries and thefts, involving houses, camps, or other property and the fact that these crimes resulted in economic injury to the victims. Considering all of the above, the trial court sentenced | isthe defendant to 25 years at hard labor without benefits of probation or suspension of sentence.
The sentence imposed by the trial court falls within the statutory guidelines of La. R.S. 15:529.1. The record does not indicate the trial court abused its discretion by imposing a sentence that is a purposeless and needless infliction of pain and suffering. Although not part of constitutional excessiveness review, the record reflects that the trial judge adequately considered the aggravating and mitigating factors prescribed in La. C. Cr. P. art. 894.1, including appellant’s personal history, as well as his extensive criminal history. For these reasons, we find no merit to the assignment of error asserting excessiveness of the sentence.
Voir Dire[2]
In the third assignment of error, the defendant asserts that the state committed reversible error by making a prejudicial remark in the presence of the entire prospective jury pool. The defendant contends that the prosecution impermissibly expressed personal views or opinion during voir dire of the first prospective juror. Specifically, he argues that the prosecutor’s statement, “I believe this defendant’s guilty,” while explaining what each side would be required to prove, was a factor in the jury’s guilty verdict.
Because the prosecutor did not mention other crimes, his allegedly prejudicial remark in the presence of the jury does not constitute reversible error. Moreover, the defense did not object or request admonition from the | Htrial court at the time of the remark. As provided by La. C. Cr. P. art. 841, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. In the absence of an objection to preserve the alleged error for appeal, we find that the assignment of error is without merit.

Other Crimes

In the fourth assignment of error, the defendant contends that the trial judge committed reversible error by allowing the prosecution to introduce evidence of other crimes, beyond that which the trial court deemed admissible. Specifically, the defendant contends that the state’s line of questioning and testimony elicited from Wright exceeded the trial judge’s ruling regarding the admissibility of evidence of other crimes. The defendant argues that Wright’s testimony regarding his “numerous convictions” prejudiced him and violated his right to a fair trial.
*991 With regard to statements by the trial judge, district attorney, or court official, La. C. Cr. P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
[[Image here]]
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the | isdefendant, however, requests that only an admonition be given the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Official Revision Comment (b) of La. C. Cr. P. art. 770 provides: “A failure to move for a mistrial is a waiver of the error, since this article requires a motion by the defendant.”
La. C. Cr. P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
[[Image here]]
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Pursuant to Article 771, a defendant’s remedy is to request an admonition or a mistrial when a witness refers directly or indirectly to another crime committed or alleged to have been committed by him, as to which evidence is not admissible. State v. Ruffin, 2011-0135 (La.App. 4th Cir.12/21/11), 82 So.3d 497, writ denied, 2012-0400 (La.9/12/12), 98 So.3d 813; State v. Sartain, 98-0378 (La.App. 4th Cir.12/1/99), 746 So.2d 837. Upon a motion by the defendant a mistrial is mandated under Article 770 when a remark is made by judge, district attorney, or court official within hearing of the jury and such remark refers to another crime |! 6committed or alleged to have been committed by the defendant as to which evidence is not admissible. However, no mistrial is mandated under Article 771 for such a remark by a witness; rather, on a motion by the defendant the court “may grant a mistrial if it is satisfied that an admonition is not sufficient to assure defendant a fair trial.” La. C. Cr. P. art. 771(2).
Because Wright was a witness, her remark referring to other crimes committed by the defendant does not mandate a mistrial. Moreover, because the defendant did not request an admonition (or a mistrial) as permitted under Article 771, the error is waived. La. C. Cr. P. art. 841(A). We note that the defendant testified as to a number of prior offenses. His testimony plus Wright’s testimony regarding her supervision of him apprised the jury that the *992 defendant was a multiple offender. Thus, Wright’s comment regarding his having “numerous convictions” on his parole record is harmless error. This assignment of error lacks merit.

Habitual Offender Adjudication

In the fifth assignment of error, the defendant challenges his habitual offender adjudication. He asserts that the habitual offender adjudication and sentence imposed by the trial judge are illegal and unconstitutional. Specifically, he contends that his 2006 convictions for illegal possession of stolen things and alteration of a motor vehicle identification number in Caldwell Parish, which were used to establish him as fifth-felony habitual offender, were “constitutionally infirm.” He argues that when he pled guilty, he was not placed “on notice that his bargained sentence would be subjected to the result of the PSI (Pre-Sentence Investigation Report).” He |17asserts that he did not get the sentence he bargained for and essentially asks this court to revisit the merits of his sentencing for those crimes.
Documentary evidence of these prior convictions was introduced during the habitual offender hearing. The transcript from the habitual offender hearing indicates that the defendant’s attorney, Charles Kincade, stated: “If they’re certified copies Judge, we’re not going to object to the admissibility but would reserve any argument as to the weight.” The defendant never raised the issue of the legal sufficiency of his 2006 convictions below; therefore, a collateral attack on these convictions is now waived. Any challenge to the previous conviction or adjudication which is not made before the sentence is imposed may not thereafter be raised to attack the sentence and is not preserved for appellate review. La. R.S. 15:529.1(D)(1)(b); State v. Henry, 36,217 (La.App.2d Cir.8/14/02), 823 So.2d 1064; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 2000-3070 (La.10/26/01), 799 So.2d 1150 and 2001-2087 (La.4/19/02), 813 So.2d 424. Therefore, this claim is without merit. Ineffective Assistance of Counsel
In his sixth assignment of error, the defendant contends that his trial counsel’s representation was of such low caliber that it amounted to no representation at all; thus, he was denied his constitutionally protected right to effective representation.
The defendant raises the following five claims of ineffective assistance of counsel:
|1R1. Trial counsel, Charles Kincade, did not object to the prejudicial remark made by the prosecution in the presence of the prospective jurors during voir dire.
2. Kincade made multiple mentions of his criminal record, demonstrating that he had no intention of adequately representing him at trial.
3. Kincade forced him to take the stand without any prior discussion or preparation.
4. Kincade did not call witnesses that should have been called to testify on his behalf, despite defendant having supplied him with their personal information.
5. Kincade did not object to leading questions posed to the witness, Laree Hart.
As a general rule, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Ellis, 42,520 *993 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325.
The defendant’s conclusory statements regarding his ineffective assistance of counsel at trial are insufficient to resolve the issues on appeal. Because the record is insufficient to adequately resolve the issue of the effectiveness of the trial counsel, the defendant’s claims are better reserved for an application for post-conviction relief and a possible evidentiary hearing.
^CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. The theft charges against Tommy were eventually dropped. However, at the time of the defendant’s trial, Tommy was incarcerated and serving time for a manufacturing methamphetamine charge. Tommy gave information about the four-wheeler to the police, believing he would receive some help with the theft charges he faced.

. This and the remaining assignments of error were filed by the defendant to supplement those errors argued on his behalf by the Louisiana Appellate Project.